GEORGE GEORGACOPOULOS, Indiv. and as Guardian of the Estate of Rina Georgacopoulos, a Disabled Person, Plaintiffs-Appellees, v. THE UNIVERSITY OF CHICAGO HOSPITALS AND CLINICS *et al.*, Defendants-Appellants.

First District (1st Division)    No. 85—3153

Opinion filed February 2, 1987.

Peterson, Ross, Schloerb & Seidel, of Chicago (John W. McCullough, Michael C. Cook, and Paul S. Turner, of counsel), for appellants.

James Thomas Demos & Associates, Ltd., of Chicago (James T. Demos and Linda A. Leonetti, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

The defendants appeal the judgment entered against them after a jury trial in a medical malpractice suit. The suit alleged that the defendants negligently positioned and monitored a catheter that was inserted into the superior vena cava. Allegedly the catheter developed a blood clot which caused a cardiac arrest with extensive brain damage resulting. On appeal, we are asked to decide whether: (1) the trial

court erroneously admitted a "Day in the Life" videotape, which inflamed the jury's passions; (2) the trial court erroneously excluded admissions of plaintiff's counsel; (3) the trial court erroneously excluded defendants' questions designed to rehabilitate its expert witness; (4) plaintiff violated Supreme Court Rule 220 (103 Ill. 2d R. 220) when his expert witness expressed opinions that exceeded testimony given at deposition; (5) the jury's verdict was against the manifest weight of the evidence and was excessive.

In September 1982, Rina Georgacopoulos (Rina) entered the University of Chicago Hospital and Clinic for treatment of stomach cancer. During the first days of her stay in the hospital, Rina's doctors conducted tests to determine if the cancer had spread to other parts of her body. These tests indicated that the cancer was confined to her stomach, so they decided to remove it. To prepare Rina for surgery, her doctors decided to fortify her physical condition by providing nourishment through a catheter.

This type of catheter is positioned in the superior vena cava, and chemical nutrients are infused through the tube. After the catheter is placed in the patient, an X ray is taken to confirm that it is properly positioned. A properly positioned catheter should lie straight in the vein with the tip pointing down.

On September 23, 1982, a catheter was placed in Rina's superior vena cava. At 4 p.m. on that day, an X ray was taken. The X ray showed two significant problems with the placement of the catheter. First, the X ray showed that the tip of the catheter was coiled back on itself. Second, the X ray indicated a mass that was interpreted to be bleeding inside the chest.

A follow-up X ray was taken later that evening which showed the same internal problems found earlier, and in addition, it showed an abnormal accumulation of fluid inside the membrane that covers the lungs. Despite these abnormal findings, no corrective action was taken. At 10:40 p.m. on September 25, 1982, Rina stopped breathing and went into cardiac arrest. She was resuscitated, but not before she suffered permanent brain damage because of lack of oxygen.

Rina sustained extensive physical and mental damage. After months of therapy she still can only speak in short phrases slightly above a whisper. She has difficulty with fine motor skills, such as buttoning a button or brushing her teeth. She walks stiffly and very tentatively. She cannot perform any household chores and requires continuous care and attention. The majority of her day is spent watching television.

George Georgacopoulos, the plaintiff, brought suit on behalf of his

disabled wife for pain and suffering, disability and disfigurement, lost earnings, and her expenses. He brought suit on his own behalf for the loss of his wife's society, companionship, and conjugal relationship and the loss of her services. The jury awarded $750,000 to George Georgacopoulos and awarded Rina Georgacopoulos $3,510,000. The defendants appeal the verdict for Rina Georgacopoulos.

## I

■ The defendants initially argue that the court erroneously admitted into evidence a "Day in the Life" videotape, which depicted Rina's activities after her injuries. They argue that this videotape inflamed the jury, especially because it showed a painful physical therapy session. "Day in the Life" videotapes, similar to the tape admitted in the present case, have been admitted if their probative value is not outweighed by their inflammatory effect. (*Barenbrugge v. Rich* (1986), 141 Ill. App. 3d 1046, 1056, 490 N.E.2d 1368, 1375.) No assertion is made here that the evidence was not an accurate portrayal of Rina's condition and circumstances; its probative value is not seriously questioned. The insistence that such evidence is merely cumulative is not persuasive. *Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 500-01, 322 N.E.2d 5, 10-11.

■ Defendants' reliance on *Thomas v. C. G. Tate Construction Co.* (D.S.C. 1979), 465 F. Supp. 566, is simply misplaced. The plaintiff in *Thomas* suffered extensive burns. The entire videotape in that case showed the plaintiff undergoing a painful therapy session. The court described the tape as follows: "[t]he tape definitely incites extreme sympathy for the plaintiff and would inflame the average person." (465 F. Supp. 566, 569.) The court excluded the tape, finding it to be more prejudicial than probative.

In the instant case, the trial judge described the tape as "tasteful." Furthermore, the objectionable physical therapy session amounted to only a few minutes out of a 19-minute videotape. On these facts, the videotape was properly admitted and no undue prejudice accrued to defendants.

## II

Defendants next argue that the court erroneously excluded the binding admissions of plaintiff's counsel made during plaintiff's pretrial argument to expedite the case to trial. According to the defendants, plaintiff's counsel endorsed the defendants' position that Rina had a very limited life expectancy. At trial, the court refused to allow defendants' counsel to present this "admission" during closing argu-

ment.

██ █ The law in Illinois is clear that "an admission of a party, to be used against him must be unequivocal, and positive and definitive in character." (*Hudson v. Augustine's, Inc.* (1966), 72 Ill. App. 2d 225, 237, 218 N.E.2d 510, 516.) In this case, the "admission" of plaintiff's counsel is not "unequivocal." Read in context, it is not clear that plaintiff's counsel was endorsing defendants' position to advance the case to trial. Rather, the statements of plaintiff's counsel may have been meant to inform the judge of a fact that was very material to the scheduling of the case; the possibility that Rina may face imminent death. The statements are far from unequivocal and therefore do not constitute admissions of a party.

## III

The defendants argue that the trial court erred when it excluded questions designed to rebut the inference that one of its expert witnesses was biased because he was an alumnus of the University of Chicago. Defendants intended to question the expert on redirect examination of prior instances where the expert had recommended settling a case, rebutting the inference that he was a "testifier for hire." The judge excluded this line of questioning, ruling that it was irrelevant and highly prejudicial. He stated that "[t]he very fact that this man believes what should be settled and what should be tried is totally irrelevant."

██ The proffered questions that were excluded were not clearly relevant and may have confused the jury. Excluding evidence that it considers to be irrelevant or confusing certainly is within the court's discretion. (*Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1018, 498 N.E.2d 867, 873.) Even if the questions had been allowed, it is unclear that they would have served to rehabilitate defendants' expert witness. Therefore, the trial court did not abuse its discretion when it excluded testimony that was *remotely relevant* and easily could have misled the jury.

## IV

Defendants charge that the plaintiff's key expert witness greatly expanded the scope of his deposition testimony at trial in violation of Supreme Court Rule 220. This rule states in relevant part:

"(c) Discovery.

(1) Upon interrogatory propounded for that purpose, the party retaining or employing an expert witness shall be required to state:

(i) the subject matter on which the expert is expected to testify;

(ii) *his conclusions and opinions and the bases therefor;* and

(iii) his qualifications.
\*\*\*

(3) A party shall be required to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel.
\* \* \*

(d) Scope of Testimony. To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, deposition or requests to produce, *his direct testimony at trial may not be inconsistent with nor go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings."* (Emphasis added.) 103 Ill. 2d R. 220.

In particular, defendants argue that plaintiff's expert witness, Dr. Marvin Sackner, violated Rule 220 when he offered his opinion as to the possible reasons why there was no blood return in the catheter 13 hours after Rina's pulmonary and cardiac arrest. He testified that no blood return could indicate that the catheter had developed a kink in the tube, that it had impacted against the wall of the superior vena cava, or that it had developed a clot at the end of the tube. According to defendants, this testimony formed part of the basis for his opinion concerning the cause of Rina's arrest, going far beyond his deposition testimony.

During discovery, Dr. Sackner stated that in his opinion the cause of Rina's arrest was a pulmonary emboli, a clot in her lung, that originated in the superior vena cava or in the subclavian vein. He stated that the basis for his opinion was X rays he had seen and "the whole course of events" leading up to the arrest. At trial, Dr. Sackner reiterated this testimony as to the cause of Rina's arrest and the basis for his opinion.

■ Dr. Sackner never offered a new basis for his expert opinion as to the cause of Rina's arrest. His testimony concerning the reasons why there was no blood return in the catheter was offered to explain a fact in evidence. The reason for no blood return was previously brought out during the direct examination of Dr. Nicholas Vogelzang, Rina's attending physician. Dr. Vogelzang testified that he could not explain why there was no blood return. Dr. Sackner's testimony on this point was admitted only to explain this earlier testimony and he

specifically denied that the finding of no blood return formed the basis for his expert opinion.

Rule 220 requires that an expert reveal the basis for his opinion. Since the finding of no blood return did not form the basis for his opinion, his testimony did not violate Rule 220 and was properly admitted.

## V

Defendants raise two arguments with respect to damages. First, they claim that there was no evidence presented of past and future pain and suffering to support a separate verdict. Second, they claim that the entire verdict was based on an inflated estimate of Rina's life expectancy. Both of these arguments are based on a distorted view of the record and are without merit.

■ The record before us supports a verdict for past and future pain and suffering. The videotape showed the pain that Rina suffers on a daily basis. Her husband testified that she must go through this painful exercise every day or her muscles will atrophy. In addition, Dr. Caroline Turner, Rina's neurologist, testified that because of Rina's unsteady gait she is "at risk for an injury such as a bone or skull fracture," and "she may develop pressure sores because she is not able to move around and is forced to sit or lie in certain positions." These sores can become infected causing damage to other parts of the body. The evidence amply demonstrates that Rina suffers pain on a daily basis and because of her injuries, she may suffer future pain.

■ With respect to the second argument, defendants claim that plaintiff argued during closing that Rina would live between 2.2 and 60 years. However, the transcript shows that plaintiff's counsel argued that Rina may live between 2.2 years and *age* 60. The range was *not* 2.2 to 60 years, but rather 2.2 to 18 years (Rina's age at trial was 42). This range was supported by the record. Thus, the jury's verdict was not predicated on an inflated estimate of Rina's life expectancy.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.