KELLY LYNN CISARIK, a Minor, by Nancy Cisarik, her Mother and Next Friend, *et al.*, Plaintiffs, v. PALOS COMMUNITY HOSPITAL *et al.*, Defendants (Ann Herbert, Contemnor-Appellant).

First District (2nd Division)   No. 1—88—1139

Opinion filed December 29, 1989.

Barry D. Goldberg, of Goldberg & Goldberg, and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Kathleen M. Krist, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, E. Michael Kelly and Joshua G. Vincent, of counsel), for appellee.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Kelly Lynn Cisarik, a minor, by her mother and next friend, brought this action for damages alleging that defendants were negligent in providing certain medical services. On October 13, 1987,

the attorneys for one of the defendants wrote to counsel for plaintiff:

"If you are planning to use a 'day in the life' movie at trial I would ask your agreement on certain points:

—Since I consider such movies to be akin to tests I would ask for notice when the movie is being made;

—I would ask that the opposing attorneys have the option to have an observer present;

—I would ask, at my expense, for a copy of all film shot.

If you disagree with these points, please advise and we can take the matter up with Judge Foreman on November 2, 1987."

On December 8, 1987, counsel for the plaintiff responded:

"I am planning to take a 'day in the life' film of my client and do not agree with your perspective and I do not intend to permit you or any Defendant to be present at the filming of said film. I suggest you take whatever action in that regard that you wish. You will be given a copy of the film at your expense as requested."

Thereafter, defendant moved for an order in accordance with its request. After a hearing, the trial court entered an order allowing all defendants to be present during the filming of a "day in the life" movie of Kelly. The order also provided that: (1) defendants were to be given notice of the making of the film; (2) the film was to be preserved in its entirety; and (3) the film was to be made available to all defendants.

This appeal arises from an order entered by the circuit court of Cook County on April 7, 1988, holding Ms. Ann Herbert, an attorney for plaintiff, in contempt. Ms. Herbert was held in contempt and fined $100 when she refused to comply with the court's order, believing that defendants had no right under Illinois law to be present during the filming.

As a preliminary matter, we note that this is a case of first impression in Illinois. Under the facts of this case, we conclude that Ms. Herbert's refusal was a good-faith effort to secure an interpretation of an issue without direct precedent in this State. By subjecting herself to a contempt citation, she exercised a permissible method of testing a pretrial order. *Bicek v. Quitter* (1976), 38 Ill. App. 3d 1027, 350 N.E.2d 125.

Until relatively recent times, the use of motion pictures in the trial of personal injury cases has been the domain of the defendants. In 1935, the ABA Journal reported the use of films to expose malingering plaintiffs. (Sweet, *The Motion Picture as a Fraud Detector,*

21 A.B.A. J. 653 (1935).) Even at this time, "the most common use of motion pictures as evidence today is to refute the extent of disability claimed by plaintiffs in personal injury cases ***. Indeed this use *** has become so common that in almost every city telephone directory will be found advertisements of industrial motion picture photographers stating that they specialize in this type of work." 2 C. Scott, Photographic Evidence §729 (2d ed. 1969).

"In recent years increasing evidential use has been made of what have been called 'day in the life' films and videotapes of persons whose injuries are in question in litigation." 3 C. Scott, Photographic Evidence §1315 (2d ed. Supp. 1987).

▮ It is well established that motion pictures, when properly authenticated and relevant, are admissible into evidence. For a long time, Illinois courts have upheld the use of motion pictures to expose a malingering plaintiff. See *McGoorty v. Benhart* (1940), 305 Ill. App. 458, 27 N.E.2d 289.

"Day in the life" films were first considered in Illinois in 1986 when this court approved the use of such a film in *Barenbrugge v. Rich* (1986), 141 Ill. App. 3d 1046, 490 N.E.2d 1368, *appeal denied* (1986), 112 Ill. 2d 570. Again, in 1987, the use of such films was approved in *Georgacopoulos v. University of Chicago Hospitals & Clinics* (1987), 152 Ill. App. 3d 596, 504 N.E.2d 830. These are the only reported Illinois cases on the subject.

Defendants in the case at bar do not dispute the admission of "day in the life" films. Here the issue is the extent to which the defendants can participate in plaintiff's preparation of evidence that may be used at trial.

Since a pretrial order is involved in this appeal, in the interest of judicial economy, it may be well to consider a pretrial order that may apply to both parties in the preparation of their respective cases. With the extensive use of video by both sides, "[w]e need—but do not have—systematic, organized discovery procedures that insure disclosure of trial videotapes far enough in advance of trial so that information can be gathered and an effective rebuttal planned." (Chernow, *Video in the Courtroom: More than a Talking Head*, 15 Litigation 3, 6 (1988).) We will provide such a procedure for purposes of this case.

The principal controversy with the trial court's order is that it permits each party to have one attorney present "to observe the making of said film" and "[i]n the event the attorney for the plaintiffs asks questions of any individual depicted in the film, each defense attorney shall have the right to conduct a cross-examination of

that individual." The reasoning of the trial court is reflected in the following statement: "Therefore, I find that this being consistent with an evidence deposition in that the provisions for the taking of an evidence deposition really and truly ought to be applied for this 'Day in the Life' video." We disagree.

■ An evidence deposition is a substitute for the appearance of a witness at trial. It is real evidence presented in the same manner as it would be at trial. This is different from the preparation of a "day in the life" film, which is not evidence. It becomes evidence only after it is offered and admitted after passing rigorous safeguards dealing with its authenticity and relevance.

If a "day in the life" film is considered to be like an evidence deposition, then shouldn't the same standard be applied to surveillance-type films prepared by the defendants for possible use as evidence against the plaintiff?

■ In the case at bar, plaintiff has indicated her intent to prepare a "day in the life" film. The film may be prepared by the plaintiff without the presence of any representative of the defendants. However, all of the film taken must be preserved, whether or not included in the final edited version of the proposed presentation. Prior to trial, during the period of discovery, defendants shall be entitled to view all of the film taken and to take the discovery deposition of the plaintiff's authenticating witness or witnesses. In addition, defendants may use any film taken and not used by the plaintiff and use it as their own evidence, if it is otherwise admissible.

Likewise, in response to an appropriate interrogatory, defendants shall disclose to the plaintiff the existence of any film that they intend to use to refute the extent of plaintiff's alleged disability. Prior to trial, during the period of discovery, plaintiff shall be entitled to view all of the film taken and to take the discovery deposition of the defendants' authenticating witness or witnesses. In addition, plaintiff may use any film taken and not used by the defendants and use it as her own evidence, if it is otherwise admissible.

We therefore conclude that the order of the trial court requiring the presence of counsel for defendants at the preparation of plaintiff's film for possible use at trial is reversed, and this cause is remanded for further proceedings in accordance with the views expressed herein.

■ Where noncompliance with an order by an attorney raises an issue of first impression, the resulting contempt order and fine shall be set aside. (*Consolidated Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, ·432 N.E.2d 250.) Accordingly, the order holding Ms. Ann

Herbert, plaintiff's attorney, in contempt and imposing a fine for said contempt is vacated.

Accordingly, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

DiVITO and HARTMAN, JJ., concur.