(No. 69807

KELLY LYNN CISARIK, a Minor, by Nancy Cisarik, her Mother and Next Friend, *et al.*, v. PALOS COM- MUNITY HOSPITAL *et al.* (Ann Herbert, Contem- nor-Appellee; Palos Community Hospital, Appellant).

*Opinion filed September 26, 1991.*

BILANDIC, J., took no part.

MILLER, C.J., joined by FREEMAN, J., dissenting.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (E. Michael Kelly, D. Kendall Griffith and Lynn M. Egan, of counsel), for appellant.

Barry D. Goldberg, of Goldberg & Goldberg, of Chicago (David A. Novoselsky and Linda A. Bryceland, of David A. Novoselsky & Associates, of Chicago, of counsel), for contemnor-appellee.

Martha A. Churchill, of Chicago, for *amici curiae* Illinois Chamber of Commerce *et al.*

JUSTICE HEIPLE delivered the opinion of the court:

This is a medical malpractice case brought by a brain-damaged infant against a hospital and others. As part of plaintiff's case in chief, her counsel intends to produce a motion picture of plaintiff which would depict a typical day in her life. The purpose of the movie is to give the jury a grasp of the full extent of plaintiff's disabilities and handicaps.

Defense counsel asked for and obtained from the trial court a protective order giving them advance notice of the filming, the right to be present at the filming, and a copy of the finished film as well as all edited out and unused footage. The appellate court modified the protective order in some respects. 193 Ill. App. 3d 41.

Viewed in its proper light, a so-called "Day in the Life Movie" is merely a type of demonstrative evidence. In such respect, it is comparable to a still photograph, a graph, a chart, a drawing or a model. The preparation of such evidence falls within the work product of the lawyer who is directing and overseeing its preparation.

Demonstrative evidence has no probative value in itself. It serves, rather, as a visual aid to the jury in comprehending the verbal testimony of a witness. (M. Gra-

ham, Cleary & Graham's Handbook of Illinois Evidence §401.2 (5th ed. 1990).) Because a "Day in the Life" film is a form of motion picture it is admissible evidence on the same basis as photographs. (*Amstar Corp. v. Aurora Fast Freight* (1986), 141 Ill. App. 3d 705.) Consequently, before a "Day in the Life" film can become evidence at trial it must first pass a two-prong test. First, a foundation must be laid, by someone having personal knowledge of the filmed object, that the film is an accurate portrayal of what it purports to show. (*People v. Donaldson* (1962), 24 Ill. 2d 315, 319.) Second, the film is only admissible if its probative value is not substantially outweighed by the danger of unfair prejudice. *Barenbrugge v. Rich* (1986), 141 Ill. App. 3d 1046; *Georgacopoulos v. University of Chicago Hospitals & Clinics* (1987), 152 Ill. App. 3d 596.

Defense counsel argues that since "Day in the Life" films are intended "to demonstrate a parade of horribles," they should be subjected to more stringent discovery guidelines than other types of evidence, in order to afford all parties a measure of fairness. We disagree. As correctly pointed out by plaintiff's counsel at oral argument, defense counsel has the right to bring before a trial court anything that is objectionable about the film. Indeed, Illinois courts, including this court, have been willing to exclude motion pictures that are unfairly prejudicial. See, *e.g., Amstar Corp. v. Aurora Fast Freight* (1986), 141 Ill. App. 3d 705 (videotape taken properly excluded from evidence since it offered vantage point different from that of witness whose testimony was sought to be impeached); *French v. City of Springfield* (1976), 65 Ill. 2d 74 (error to admit plaintiff's film of accident scene that is prejudicial where it is inaccurate and tends to support plaintiff's theory).

We believe that opposing counsel has no right to intrude into the production of this demonstrative evidence.

The test of this evidence will occur when and if it is offered into evidence. That is the proper time for the trial court to deal with its admissibility.

Accordingly, we reverse both the trial court and the appellate court as to the appropriateness of the protective order. We affirm the appellate court as to the reversal of the contempt order which was entered against plaintiff's counsel for refusal to comply with the trial court's order. The cause is remanded to the circuit court of Cook County for further proceedings consistent with the views expressed herein.

> *Appellate court affirmed in part*
> *and reversed in part;*
> *circuit court reversed;*
> *cause remanded.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.

CHIEF JUSTICE MILLER, dissenting:

The majority opinion ignores the proper role of discovery in the litigation process and inexplicably denies the present defendants certain minimal pretrial safeguards traditionally afforded litigants under our well-established rules of discovery. For those reasons, I respectfully dissent.

This appeal arises from a pretrial order entered by the circuit court concerning defendants' discovery rights with respect to a day-in-the-life film that plaintiff intends to prepare for use at trial. A brief review of the history of this case will demonstrate precisely what is at issue here. Both the trial and appellate courts in the case at bar recognized the proposed day-in-the-life film as a distinct type of evidence, and each court formulated guidelines intended to ensure the defense appropriate discovery opportunities with respect to the film. The major

difference between the guidelines issued by the trial court and those issued by the appellate court was that the latter did not require that defense counsel be allowed to attend the filming. By reversing the protective order in its entirety, today's decision eliminates even the appellate court's reduced set of guidelines and seemingly cuts the present proceeding loose from fundamental discovery requirements.

The trial judge aptly noted that a day-in-the-life film is "vital and valuable evidence" that may have a "serious impact" on all the parties to an action. In a written order, the trial judge provided that plaintiff give 14 days' notice to the defendants of the date, time, and place of filming; that counsel for each of the defendants be permitted to be present during filming and, furthermore, be allowed to cross-examine, at that time, anyone questioned by plaintiff's counsel during filming; and that all footage be preserved and made available upon the request of any party.

Although the appellate court did not agree with the trial judge that defense counsel should be allowed to be present during filming, the appellate court recognized the need for discovery guidelines for preparation of the proposed film. The appellate court required plaintiff to preserve and make available to defendants all of the film taken, including any footage not included in the final edited presentation. (193 Ill. App. 3d 41, 45.) The appellate court also determined that defendants were entitled to take discovery depositions of plaintiff's authenticating witnesses and to offer as evidence any otherwise admissible film not used by plaintiff. (193 Ill. App. 3d at 45.) The appellate court granted plaintiff the same discovery opportunities with respect to any film that defendants intended to prepare for use at trial. 193 Ill. App. 3d at 45.

Before this court, plaintiff makes no challenge to the discovery guidelines fashioned by the appellate court and asks that the court's judgment be affirmed. Indeed, plaintiff relies extensively on the appellate court's guidelines in arguing against the additional requirement, imposed by the circuit judge, that defense counsel be allowed to be present during filming. In plaintiff's view, counsel's presence at filming is unnecessary because the appellate court's guidelines are sufficient to ensure adequate discovery opportunities for the defendants. Nonetheless, by reversing that portion of the appellate court's judgment pertaining to the protective order, the majority opinion effectively discards those guidelines as well, which simply reflect well-established principles of discovery.

The majority opinion misidentifies the issue in the present appeal, eliminating defendants' discovery rights on the ground that the proposed film must ultimately satisfy tests for admissibility at trial. The defects of this logic are at once apparent. Under the majority's reasoning, litigants should have virtually no discovery rights, for all evidence is subject to tests of admissibility at trial; furthermore, if evidence is later deemed admissible, then it may be introduced even though the opposing party has had no opportunity to discover it.

The majority's decision contravenes our policy of encouraging a broad scope of discovery. It is clear from our case law that tests of admissibility are not a substitute for discovery rights and, moreover, that compliance with discovery will not guarantee the admission of an item of evidence at trial. Our rules of discovery reflect principles of fairness, and are designed to further the efficient and expeditious administration of justice. (*Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 357.) Liberal discovery rights were originally developed "in response to prevailing dissatisfaction with procedural doctrines which had

exalted the role of a trial as a battle of wits and subordinated its function as a means of ascertaining the truth." (*Krupp v. Chicago Transit Authority* (1956), 8 Ill. 2d 37, 41.) The current provisions reflect our State's continued adherence to the same policy of broad discovery. Supreme Court Rule 201 specifically requires "full disclosure of not only those things which are admissible at trial, but also that which leads to admissible evidence." (134 Ill. 2d R. 201(b)(1).) It is difficult to comprehend what compels the majority to depart from these settled principles in the present case. We should not now, at this late date, begin to reduce the role of discovery in litigation and revert to the kind of trial by ambush that can result when discovery rights are ignored.

In support of its holding, the majority asserts that a day-in-the-life film is simply a species of demonstrative evidence, one that is comparable in effect to a still photograph, chart, or graph. Even demonstrative evidence, however, is subject to discovery. (See 134 Ill. 2d R. 201(b).) And in making this comparison, the majority opinion overlooks the special nature of day-in-the-life films. Although such a film may be used demonstratively, the majority's conclusion that evidence of this type is "comparable to a still photograph, a graph, a chart, a drawing or a model" is misleading, if not inaccurate. As defendants observe, the suggested analogy is appealing in its simplicity but fails to acknowledge the powerful and distinctive nature of the evidence. See Comment, *Plaintiffs' Use of "Day in the Life" Films: A New Look at the Celluloid Witness*, 49 UMKC L. Rev. 179, 182 (1981).

For example, in *Bolstridge v. Central Maine Power Co.* (D. Me. 1985), 621 F. Supp. 1202, 1204, a case in which a day-in-the-life film was excluded from evidence, the court characterized the film as "troublesome because it dominates evidence more conventionally adduced sim-

ply because of the nature of its presentation." In *Haley v. Byers Transportation Co.* (Mo. 1967), 414 S.W.2d 777, 780, the Missouri Supreme Court upheld the exclusion of a day-in-the-life film from evidence because its "very obvious impact \*\*\* would have been to create a sympathy for the plaintiff out of proportion to the real relevancy of the evidence." In *Pisel v. Stamford Hospital* (1980), 180 Conn. 314, 324, 430 A.2d 1, 8, the Connecticut Supreme Court held that a particular day-in-the-life film was admissible but cautioned that courts, in ruling on the admissibility of this type of evidence, should carefully consider the "danger that the filmmaker's art may blur reality in the minds of the jury."

In the present case, plaintiff has stated that a physician or other medically trained expert might narrate the film and question the injured minor or appear with her as she performs her daily activities. Before the trial court, plaintiff's counsel explained that the expert will perhaps subject the child to a "psychomotor test for the purpose of eliciting a response indicating the lack or the amount of acuity or awareness or attention or knowledge." Although this evidence would certainly be demonstrative of plaintiff's disabilities, it would also pose certain hearsay problems, through either the statements or conduct of the participants. See *Bolstridge*, 621 F. Supp. at 1204 ("admission of the [day-in-the-life film] into evidence will create the risk of distracting the jury and unfairly prejudicing the Defendant, principally though not exclusively, because the benefit of effective cross examination is lost"); *Haley*, 414 S.W.2d at 780 (day-in-the-life film "constituted in reality testimony from plaintiff which was not subject to cross examination"); M. Graham, Cleary & Graham's Handbook of Illinois Evidence §401.8, at 12 (Supp. 1991) (conduct depicted in day-in-the-life films might implicitly constitute testimonial assertions).

As the above discussion demonstrates, a day-in-the-life film is a distinct type of evidence, one that is not simply equivalent to still photographs, charts, and graphs, as the majority would have it. Indeed, there might be circumstances in which a film will not be admissible unless opposing counsel has been afforded the opportunity to attend its preparation. We need not determine here, however, what conditions must be met to secure its eventual admission into evidence. By the same token, it should also be clear that the possibility that certain evidence might later fail to be admissible does not mean that an opposing party is not entitled to the full range of pretrial discovery opportunities with respect to it.

In sum, I disagree with the majority's misplaced reliance on tests of admissibility to resolve the discovery issue presented in this appeal. The court's conclusion that the proposed film is not subject to discovery because it will eventually be tested for admissibility at trial is at odds with our established rules of discovery. The majority opinion ignores the proper role of discovery in the litigation process and, as a result, strips the defendants here of the full range of discovery opportunities to which they are entitled. I would affirm the judgment of the appellate court.

JUSTICE FREEMAN joins in this dissent.