Gerald W. HAHN, Respondent,

v.

TRI–LINE FARMERS CO–OP, et al., Plaintiff–Intervenors, Respondents,

v.

HUTCHINSON WIL–RICH, INC., formerly known as Hutchinson Division of Lear Siegler, Defendant and Third-Party Plaintiff, Respondent (C4–90–2738) Appellant (C3–91–5),

v.

TRI–LINE FARMERS CO–OP, Third-Party Defendant, Appellant (C4–90–2738) Respondent (C3–91–5).

Nos. C4–90–2738, C3–91–5.

Court of Appeals of Minnesota.

Dec. 3, 1991.

Review Denied Jan. 27, 1992.

George G. Eck, Dorsey & Whitney, Richard R. Caldecott, Caldecott, Forro & Taber, Minneapolis, for Gerald W. Hahn.

Kent Charpentier, Koll, Morrison & Charpentier, Saint Paul, Kay Nord Hunt,

Mark N. Stageberg, Lommen, Nelson, Cole & Stageberg, Minneapolis, Kevin Stroup, Clarksfield, for Tri–Line Farmers Co-op.

Eric J. Magnuson, Jeanne H. Unger, Rider, Bennett, Egan & Arundel, Minneapolis, Gordon H. Hansmeier, David K. Ryden, Donohue, Rajokowski, Ltd., St. Cloud, for Hutchinson Wil–Rich, Inc., formerly known as Hutchinson Division of Lear Siegler.

Considered and decided by KALITOWSKI, P.J., and FORSBERG and SCHUMACHER, JJ.

## OPINION

FORSBERG, Judge.

Respondent Gerald Hahn sued appellant Hutchinson Wil–Rich, Inc. ("Hutchinson") for injuries he sustained when moving a grain auger manufactured by Hutchinson. Hutchinson brought a third-party action for contribution or indemnity against Hahn's employer, Tri–Line Farmers Co-op ("Tri–Line"). The jury found Tri–Line 95% at fault, Hutchinson 3% at fault, and Hahn 2% at fault, and awarded Hahn $2,197,918 in damages.

Under the rule of *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1979), the trial court determined that Hutchinson could obtain maximum contribution of $543,445 from Tri–Line, an amount equal to the total workers' compensation benefits which Tri–Line would pay Hahn. The trial court ordered Hutchinson to pay total damages of $1,610,515 and denied Hutchinson's motion to reallocate the damages uncollectible from Tri–Line pursuant to Minn.Stat. § 604.02, subd. 2 (1986).

Hutchinson filed this appeal, with which Tri–Line's separate appeal has been consolidated. By separate counsel, Tri–Line and its workers' compensation insurer, The Mill Mutuals, also filed a notice of appeal. We affirm.

## FACTS

Appellant Gerald Hahn was injured on August 28, 1986, when an auger he was towing behind a tractor detached from the tractor, rolled down a hill, and struck him in the back. Tri–Line is an agricultural cooperative with facilities in Boyd, Minnesota, where Hahn had been employed for 12 years.

Hutchinson manufactured the auger, which consisted of a long tube, eight inches in diameter, mounted at an angle on a tubular frame. The auger moved grain from the ground up into storage areas. The intake end of the auger tube rested on the ground and the discharge end was elevated in the air. The frame was on wheels so the entire assembly could be towed by tractor or truck. In 1973, Tri–Line acquired the original auger, which had a tube 53 feet in length.

In August 1986, Ordell Zietlow, Tri–Line's branch manager, told Cliff Skaja, a Tri–Line employee, to order a new auger tube. Skaja placed the order and picked the parts up at Wood and Conn, the distributor. The replacement tube was 57 feet long, four feet longer than the old tube. Skaja signed a receipt indicating the auger was "857," or eight inches in diameter and 57 feet in length. Skaja denied he was aware that he had received a longer auger tube. The longer tube changed the balance of the auger, making it more likely to tip over.

Prior to his accident, Hahn and other Tri–Line employees who used the auger were aware that the auger was top heavy and that the auger hitch could become disconnected during transport. Hahn testified he was not aware that others used a nut, bolt, and washers to secure the auger before moving it.

On the day of the accident, when Hahn moved the auger, he used a pin from the tractor draw bar to connect the auger hitch to the tractor. As a safety precaution, he secured the hitch with a ten-foot chain in case the pin and nail failed. When he started the tractor, the auger disconnected from the tractor and hit him in the back, injuring him seriously.

Several witnesses and two engineering experts testified that the nut, bolt, and washer in the tool box of the assembly carriage would have better secured the con-

nection and would have prevented the accident. The parties submitted competing expert testimony on the adequacy of the hitch's design, the undercarriage, and the warnings on the auger and tube.

The jury found that the auger was defective because the accompanying warnings were inadequate, and that Hahn and Tri-Line also were negligent. The jury apportioned the responsibility for the accident, assigning 2% to Hahn, 3% to Hutchinson, and 95% to Tri-Line.

## ISSUES

1. Whether the rule adopted in *Lambertson v. Cincinnati Corp.* is unconstitutional as applied to this case and should be judicially modified?

2. Whether the amount of the judgment which Hutchinson cannot recover from Tri-Line because of the *Lambertson* contribution limit should be reallocated among Hahn and Hutchinson pursuant to Minn. Stat. § 604.02, subd. 2 (1986)?

3. Whether the trial court erred in allowing plaintiff's counsel to inform the jury of the effect of their answers to the verdict questions, in permitting the jury to examine the pleadings, and in allowing Hutchinson to argue that Tri-Line intentionally ordered a 57-foot auger?

4. Whether the trial court erred by instructing the jury that they were not to consider plaintiff's failure to guard against defects in determining plaintiff's fault and by refusing to instruct the jury that any damage award would be nontaxable?

5. Whether the trial court erred in allowing into evidence a "Day in the Life" videotape of plaintiff, and in excluding evidence concerning plaintiff's alcohol consumption?

6. Whether the trial court erred in allowing expert testimony regarding plaintiff's move from Boyd to Minneapolis, in allowing lay witness testimony about the safety of clevis and flat bar hitches, and in allowing an expert to testify from manuals not admitted into evidence under Minn. R.Evid. 703(b)?

7. Whether the terms "proceeds for all actions for damages" to be allocated under Minn.Stat. § 176.061, subd. 6 include pre- and post-judgment interest awarded to the employee, Hahn?

## ANALYSIS

### I.

This case involves the rule articulated in *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1979), that the contribution to the third-party defendant from the plaintiff's employer cannot exceed the total amount of workers' compensation benefits which the employer shall pay the plaintiff. As Hutchinson was 3% at fault, its proportional share of the $2,197,918 of damages would be approximately $65,938. Under the common law, Hutchinson would be entitled to contribution from Tri-Line with whom it is jointly liable, for any payment in excess of that amount. However, according to Minn.Stat. § 176.061 (1986) as modified by *Lambertson*, contribution from Tri-Line is limited to $543,445. Hutchinson must pay $1,610,515. Hutchinson claims that the application of the *Lambertson* ruling to this case is unconstitutional because it provides no reasonable substitute for the common law right of contribution.

The *Lambertson* court explained the third-party tortfeasor's equitable right of contribution:

"Since workmen's compensation statutes provide that the obligations thereunder are the only liability of the employer to the employee, or his representatives, there is no common liability involving the employer and the third party in such situations; and, therefore, there is no ground for allowing contribution."
While there is no common liability to the third party *in tort*, both the employer and the third party are nonetheless liable to the employee for his injuries; the employer through the fixed no-fault workers' compensation system and the third party through the variable recovery available in a common law tort action. Contribution is a flexible, equitable reme-

dy designed to accommodate a fair allocation of loss among parties.

*Id.* at 128, 257 N.W.2d at 688 (quoting *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 374, 104 N.W.2d 843, 849 (1960)). To preserve the exclusive remedy provision of the workers' compensation statute, the court limited the third-party defendant's contribution to the total workers' compensation liability owed the employee. *Id.*, 312 Minn. at 130, 257 N.W.2d at 689.

Hutchinson bases its constitutional claim on a case involving indemnity rather than contribution. In *Carlson v. Smogard*, 298 Minn. 362, 215 N.W.2d 615 (1974), the supreme court found that Minn.Stat. § 176.-061, subd. 10 (1972), which denied a third-party defendant contribution or indemnity against an employer, was unconstitutional. The statute violated the due process clause of the fourteenth amendment to the United States Constitution and article 1, section 8 of the Minnesota Constitution because it took away a common law remedy without providing a reasonably just substitute, while fostering no legitimate legislative objective. *Id.* at 368–69, 215 N.W.2d at 620–21. Similarly, Hutchinson argues that the *Lambertson* rule deprives it of its common law right of contribution against Tri–Line because it fails to provide a reasonable substitute.

■ However, the third-party defendant in *Smogard* was not negligent and would have been entitled to indemnity but for the workers' compensation statute. *Id.* at 365, 215 N.W.2d at 619. Because Hutchinson was negligent for its failure to provide adequate warnings on the auger, Hutchinson has no right to indemnity under the *Smogard* ruling. *See Lambertson* at 124–27, 257 N.W.2d at 686–688, *citing Lunderberg v. Bierman*, 241 Minn. 349, 63 N.W.2d 355 (1954).

■ Hutchinson urges this court to judicially modify the *Lambertson* rule, suggesting various alternatives. First, Hutchinson seeks full contribution against Tri–Line under the New York Court of Appeals case, *Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). However, allowing full contribu-

tion would thwart the basic objective of the Workers' Compensation Act. The Act gives workers prompt relief in exchange for which the employer is subject to absolute liability without exposure to expensive and harassing common law actions. Full contribution would destroy the exclusive remedy provision.

■ Hutchinson also urges the court to apply the rule of *Murray v. United States*, 405 F.2d 1361, 1365 (D.C.Cir.1968). The *Murray* court stated that it would treat the employer's liability as though it were partially settled, and reduce the third-party defendant's liability by one-half on the theory that plaintiff had sold one-half of the claim when he accepted workers' compensation benefits. However, the District of Columbia Court of Appeals rejected the *Murray* credit rule as non-binding dicta with no precedential effect. *Ceco Corp. v. Coleman*, 441 A.2d 940, 953 (D.C.App. 1982).

■ Hutchinson also recommends that the court apply the amended Minn.Stat. § 604.02, subd. 1 (1988), 1988 Minn.Laws ch. 503 § 3, which restricts the liability of a tortfeasor who is 15% or less at fault to no more than four times the percentage of fault. However, the 1988 amendment to section 604.02, subd. (1) does not apply to Hahn's cause of action, which arose in 1986. "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn.Stat. § 645.21 (1988). We decline to judicially modify the contribution rule articulated in *Lambertson*, leaving further consideration of the issues which Hutchinson raises for resolution by the Minnesota Supreme Court or the legislature.

## II.

■ Hutchinson asserts in the alternative that the judgment should be reapportioned between itself and Hahn under the statute governing reallocation of uncollectible judgments:

Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a

party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

Minn.Stat. § 604.02, subd. 2 (1986). If the judgment amount attributable to Tri–Line but uncollectible under *Lambertson* were reallocated, Hahn would absorb 40% and Hutchinson would pay Hahn 60%.

The Minnesota Supreme Court has applied section 604.02, subd. 2 only where there is more than one person against whom judgment can be entered. *Schneider v. Buckman*, 433 N.W.2d 98, 103 (Minn. 1988) (no reallocation where doctor and hospital, two of three joint tortfeasors, were not parties to lawsuit because statute of limitations had run). Likewise, in this case, by operation of the *Lambertson* doctrine, Hutchinson is the sole party subject to judgment. Furthermore, section 604.02, subdivision 3 prohibits reallocation "among the claimant or others at fault who are not in the chain of manufacture or distribution of the product." This restriction is clear evidence of legislative intent to avoid applying apportionment to the detriment of injured product liability claimants.

In the case *Kempa v. E.W. Coons Co.*, 370 N.W.2d 414 (Minn.1985), section 604.02 was not applied to a workers' compensation third-party liability action because the third-party defendant and the employer were not jointly liable. The Minnesota Supreme Court stated:

[T]he statutory apportionment of damages, section 604.02, does not govern an employer's contribution or an offset to an employer's subrogation claim. * * * Clark [the third-party defendant manufacturer] and U.S. Steel [the employer] are neither jointly liable nor jointly and severally liable to U.S. Steel's employee. An employer's obligation with respect to the employee's damages is limited by his obligation for workers' compensation benefits even though the employer's fault-based share of the damages would have been greater.

*Kempa* at 420–421 (citations omitted). The requisite joint liability required for reallocation is absent in this case. *See Lambertson*, 257 N.W.2d at 688; *see also Horton by Horton v. Orbeth*, 342 N.W.2d 112, 114 (Minn.1984) (joint liability rather than joint or concurring negligence determines the right of contribution). Therefore, reallocation under section 604.02, subd. 3 is inappropriate.

### III.

■ Hutchinson and Tri–Line seek a new trial alleging that the trial court abused its discretion by restricting direct and cross-examination, improperly instructing the jury, and improperly admitting evidence. The trial court's decision not to grant a new trial should be reversed only upon a showing of a clear abuse of discretion. *Connolly v. Nicollet Hotel*, 258 Minn. 405, 104 N.W.2d 721 (1960).

Hutchinson argues that Hahn's attorney violated Minn.R.Civ.P. 49.01(b) when he said in his closing argument that unless the jury concluded that Hutchinson was more at fault than Hahn, Hahn would not recover. Hahn's attorney told the jury:

The first thing you absolutely need to know is that Gerald Hahn will not receive damages if his fault is greater than the fault of Hutchinson Wil–Rich, Inc. * * * If you find, for example, that Hutchinson is 20 percent at fault and that Gerald Hahn is 21 percent at fault, Gerald Hahn gets nothing. He gets nothing. That is the law. You are entitled to know it. Now you know it. * * * Gerald Hahn has only sued Hutchinson for money damages. Hutchinson has sued Tri–Line, saying that if we have to pay Mr. Hahn we want some of that money back. Gerald Hahn has not sued Tri–Line.

■ Rule 49.01(b) allows the judge or counsel to inform the jury of the effect of the jury's answers on the outcome of comparative fault cases so long as the judge believes the instructions or comments will

not mislead or confuse the jury. Whether a violation of Minn.R.Civ.P. 49.01 warrants the grant of a new trial is within the sound discretion of the trial court. *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 696 (Minn.1980).

 Here, the trial court did not believe that Hahn's counsel's remarks confused or misled the jury. ˙Viewing the record most favorably to the verdict, we agree. Furthermore, Hutchinson failed to make a timely objection during or immediately after Hahn's counsel's closing argument. A new trial is unwarranted in the absence of an objection and request for curative instructions. *See Bisbee v. Ruppert,* 306 Minn. 39, 48, 235 N.W.2d 364, 370 (1975).

 Tri–Line made a motion in limine to prohibit Hutchinson from arguing in its closing argument that Tri–Line intentionally ordered a 57–foot auger tube. Some Tri–Line employees denied they intentionally ordered a longer tube. However, Laddy Cusick, an employee who had used the auger tube, testified that Tri–Line wanted a longer tube with a higher reach, and that he had heard Skaja, a Tri–Line manager, discuss the problem. The Minnesota Supreme Court has stated:

> Counsel have the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom. If they are born out by the record, they cannot be deemed prejudicial.

*Connolly v. Nicollet Hotel,* 258 Minn. 405, 420, 104 N.W.2d 721, 732 (1960). Because a reasonable inference of intent to purchase a longer tube could be drawn from Laddy Cusick's testimony, the trial court properly allowed Hutchinson's closing argument on this issue.

### IV.

Hutchinson and Tri–Line claim that paragraph two of the contributory negligence jury instruction, 4 Minnesota Practice, CIV. JIG III, 130 (1986), misled the jury to believe that it could not consider Hahn's failure to discover or guard against obvious defects, and to disregard comparative fault concepts such as user negligence, assumption of the risk, or the use of a product in an unforeseeable manner.[1] Hutchinson and Tri–Line assert that they were deprived of the defense that Hahn failed to guard against the open and obvious hazard of the auger upending.

 The jury instructions must be considered as a whole. Where the jury instructions, when read together, correctly state the law on a particular issue in language which can be understood by the jury, there is no reversible error. *State v. Anderson,* 261 Minn. 431, 435, 113 N.W.2d 4, 7 (1962). Because the third paragraph of CIV.JIG III 130 instructs the jury to consider Hahn's "knowledge of his exposure to danger," the jury was free to consider Hahn's negligence and assumption of the risk. Thus, CIV.JIG III 130 accurately conveys Minnesota law when read as a part of the whole instruction to the jury.

 Furthermore, the jury found the auger was defective or unreasonably dangerous because it lacked sufficient warnings, and not because it had an open and obvious defect. Therefore, omission of paragraph two of CIV.JIG III 130 would have had no effect on the outcome of this case. "The court at every stage of the

---

1. The trial court's instruction on Contributory Negligence was as follows:

 Hutchinson Wil–Rich, Inc. has raised the defense Gerald Hahn was negligent because he failed to exercise reasonable care for his own safety. Reasonable care is that care which a reasonable person would exercise under like circumstances. It is the doing of something which a reasonable person would not do or the failure to do something which a reasonable person would do, under like circumstances.

 You may not take into consideration the failure to discover or protect against the existence of a defective condition in the product in determining whether Gerald Hahn was negligent.

 In determining whether Mr. Gerald Hahn was negligent in this case, you may consider whether he had knowledge of the product in question beyond that of the ordinary user or whether he had knowledge of his exposure to danger in using the product, which was beyond that of the ordinary user.

proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Minn.R.Civ.P. 61. This harmless error rule applies to jury instructions. *Minnesota Mut. Life Ins. Co. v. Wright*, 312 F.2d 655, 661 (8th Cir.1963).

The trial court has broad discretion in determining the propriety of jury instructions and those instructions will be deemed erroneous only if there is a clear abuse of discretion. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986). Here, a new trial is not warranted as the verdict is not so contrary to the preponderance of the evidence as to imply that the jury failed to consider all of the evidence or acted under some mistake. *See Lamb v. Jordan*, 333 N.W.2d 852, 855–56 (Minn.1983).

Tri–Line also asserts that the trial court committed reversible error by refusing to give Tri–Line's requested jury instruction that any damage award would be non-taxable. The two United States Supreme Court cases which Tri–Line cites to support its position concern federal rather than state law causes of action. *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980) (error to refuse to give an instruction concerning the non-taxability of damages in a FELA action); *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) (case involving Federal Outer Continental Shelf Lands Act remanded to state court for a determination of whether state law mandated non-taxability instructions). Neither case indicates whether the non-taxability instruction is required under Minnesota law. Another Minnesota case which Tri–Line cited where the court affirmed the non-taxability instruction also concerned FELA and not Minnesota law. *Hanson v. Chicago, Rock Island & Pac. Ry. Co.*, 345 N.W.2d 736 (Minn.1984).

In an earlier case, the Minnesota Supreme Court held that it was not error to deny a requested jury instruction on the taxation of damages. *Anunti v. Payette*, 268 N.W.2d 52, 55 (Minn.1978). After the U.S. Supreme Court rulings in *Liepelt* and

*Gulf Offshore Co.*, the Federal Court of Appeals for the Eighth Circuit stated that under Minnesota law, a federal district court should have given a non-taxability instruction in the absence of a Minnesota decision to the contrary. *Grant v. City of Duluth*, 672 F.2d 677, 683 (8th Cir.1982). The Eighth Circuit held that although due process of law did not require the jury instruction, it should have been given as it would have been helpful to the jury. *Id.* However, in *Grant*, failure to give the non-taxability instruction was not reversible error requiring a new trial. Rather, a new trial was ordered on other legal grounds. *Id.* at 682.

We also note that in cases where the non-taxability instruction was deemed appropriate, the appellate courts speculated that the jury improperly assumed the damage award would be taxable. Here, Tri–Line has presented no evidence suggesting that the jury increased damages on the improper assumption that the award would be taxable. In the absence of clear authority that the denial of a requested non-taxability instruction is reversible error, we decline to grant Tri–Line a new trial on this basis.

## V.

Tri–Line asserts that Hahn's "Day in the Life" videotape which was allowed into evidence was cumulative, prejudicial, and inflammatory. The trial court allowed the jury to see the videotape to better understand Hahn's condition as a paraplegic. Tri–Line objects to a scene where Hahn entered a bank and withdrew a small amount of money and a scene where he picked up a newspaper from the floor. Tri–Line claims that the bank scene suggested financial hardship and that both scenes attempted to create sympathy for Hahn out of proportion to the relevancy of the evidence, particularly where Hahn, his family, doctors, and vocational experts testified about Hahn's rehabilitation.

Minn.R.Evid. 403 excludes relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion, undue delay and

waste of time, or needless presentation of cumulative evidence." *State v. Buchanan*, 431 N.W.2d 542, 551 (Minn.1988). The propriety of admitting the "day in the life" videotape is committed to the broad discretion of the trial court and should be reversed only upon a showing of a clear abuse of discretion. *See Johnson v. Engen*, 386 N.W.2d 269, 270 (Minn.App.1986) (quoting *State v. Johnson*, 291 Minn. 407, 412, 192 N.W.2d 87, 91 (1971)).

▮▮▮▮ Although Hahn cites no Minnesota case dealing precisely with a videotape of a paraplegic, such videotapes have been admitted in other jurisdictions as a depiction of plaintiff's everyday activities. *Georgacopoulos v. Univ. of Chicago Hosps. and Clinics*, 152 Ill.App.3d 596, 105 Ill.Dec. 545, 504 N.E.2d 830 (1987); *Roberts v. Stevens Clinic Hosp., Inc.*, 345 S.E.2d 791 (W.Va.1986). Videotapes may be admissible in Minnesota as probative evidence that assists the trier of fact. *See, e.g., State v. Kieley*, 413 N.W.2d 886 (Minn.App. 1987) (introduction of booking videotape in a DWI prosecution did not violate driver's fifth amendment rights). Tri–Line has not shown that the trial court abused its discretion in allowing the jury to view the edited videotape.

▮▮▮▮ Tri–Line argues that the trial court improperly disallowed cross-examination of Hahn or Hahn's vocational expert, Dr. Haber, on the effect of Hahn's alcohol consumption on his future employability. Dr. Haber testified that Hahn was employable and did not have a problem with alcohol. The trial court disallowed the cross-examination because the probative value of the evidence was outweighed by its prejudice and would only confuse the jury. The trial court stated, however, that Tri–Line could introduce its own expert witness on alcoholism and rehabilitation, which Tri–Line did not do.

This court's standard of review on such evidentiary matters is very narrow:

> [E]videntiary rulings on materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence are committed to the sound discretion of the trial judge and will only be the basis for

reversal where that discretion has been abused. \* \* \* [I]n construing Minn. R.Civ.P. 61, "before an error in the exclusion of evidence may be grounds for a new trial, it must appear that such evidence might reasonably have changed the result of the trial if it had been admitted."

*Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983) (quoting *Poppenhagen v. Sornsin Constr. Co.*, 300 Minn. 73, 79–80, 220 N.W.2d 281, 286 (1974)). Tri–Line did not show that the trial court abused its discretion or that its cross-examination of Dr. Haber might reasonably have changed the outcome of the trial.

## VI.

▮▮▮▮ Tri–Line argues that the vocational expert's opinion that it is difficult for a person from a small town to move to Minneapolis for rehabilitation should have been disallowed because the jury could have reached this conclusion without the help of an expert. *See Hestad v. Pennsylvania Life Ins. Co.*, 295 Minn. 306, 310, 204 N.W.2d 433, 436 (1973). The rule on expert testimony provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Minn.R.Evid. 702. Dr. Haber's education, experience, and his personal knowledge of Hahn's situation constituted sufficient foundation for Dr. Haber to offer his opinion at trial. The trial court did not abuse its discretion in allowing Dr. Haber to so testify.

▮▮▮▮ Tri–Line also asserts that the trial court committed reversible error in allowing Ordell Zietlow to testify about the safety of clevis hitches and flat bar hitches, since he has no engineering background or other qualifications making him an expert on this subject. We agree with the trial court that the rule for opinion testimony by a lay witness allows this testimony.

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of fact in issue.

Minn.R.Evid. 701. The rule for experts also supports admission of the testimony:

The qualifications of an expert need not stem from formal training, and may include knowledge, skill, or experience that would provide the background necessary for a meaningful opinion on the subject.

Minn.R.Evid. 702 *Committee Comment* (1977). Mr. Zietlow had 28 years of experience working in farm and grain elevator related occupations and had used both clevis and flat bar hitches. Zietlow's knowledge of the safety of the hitches was sufficiently specialized within the meaning of Minn.R.Evid. 702 or 701 to qualify him to testify.

██ Tri–Line argues further that the trial court committed reversible error by allowing Hahn's ergonomics expert to read to the jury from manufacturers' brochures describing augers without producing the authors of the brochures. Tri–Line objected that there was no foundation for the brochures, that they were hearsay, and that there was no evidence that Tri–Line ever received or saw the brochures. The trial court allowed the expert to identify the brochures as documents supporting his conclusions and to read portions of the brochures to the jury under Minn.R.Evid. 703(b), which allows the admission of data into evidence for the limited purpose of showing the basis for expert opinion.

Underlying expert data must be independently admissible in order to be received upon direct examination; provided that when good cause is shown in civil cases and the underlying data is particularly trustworthy, the court may admit the data under this rule for the limited purpose of showing the basis for the expert's opinion. Nothing in this rule restricts admissibility of underlying expert data when inquired into on cross-examination.

Minn.R.Evid. 703(b).

Hahn established relevance and good cause for admitting the brochures. The brochures illustrated that as of 1986, the auger tube was defective because it did not provide a safety chain or positive attachment points for a chain. Furthermore, the Hutchinson manual failed to adequately warn users to use a bolt and two nuts in attaching a hitch pin to the auger. The trial court did not admit an unauthenticated writing into evidence in a wholesale fashion. Rather, the expert was only allowed to refer to the brochures, which were admitted for the limited purpose of supporting the expert's opinion.

### VII.

██ The intervenor, Mill Mutuals, asserts that its subrogation rights as insurer under Minn.Stat. § 176.061, subd. 6 (1986) [2]

2. The proceeds of all actions for damages or of a settlement of an action under this section, except for damages received under subdivision 5, clause (b) received by the injured employee or the employee's dependents or by the employer or the special compensation fund, as provided by subdivision 5, shall be divided as follows:
(a) After deducting the reasonable cost of collection, including but not limited to attorneys fees and burial expense in excess of the statutory liability, then
(b) One-third of the remainder shall in any event be paid to the injured employee or the employee's dependents, without being subject to any right of subrogation.
(c) Out of the balance remaining, the employer or the special compensation fund shall be reimbursed in an amount equal to all benefits paid under this chapter to or on behalf of the employee or the employee's dependents by the employer or special compensation fund, less the product of the costs deducted under clause (a) divided by the total proceeds received by the employee or dependents from the other party multiplied by all benefits paid by the employer or the special compensation fund to the employee or the employee's dependents.
(d) Any balance remaining shall be paid to the employee or the employee's dependents, and shall be a credit to the employer or the special compensation fund for any benefits which the employer or the special compensation fund is obligated to pay, but has not paid, and for any benefits that the employer or the special compensation fund is obligated to make in the future.

should be based upon the workers' compensation benefits received by Hahn plus pre- and post-judgment interest. Mill Mutuals argues that the all inclusive language of section 176.061, subd. 6 shows that subrogation rights should reflect any interest which Hahn has earned on his damage award. However, the trial court construed literally the last sentence of section 176.-061, subd. 6(d), which states:

There shall be no reimbursement or credit to the employer or to the special compensation fund for interest or penalties.

The Mill Mutuals asserts that this sentence refers only to interest or penalties assessed against an employer and insurer for making late payments or other wrongdoing. The Mill Mutuals claims that the language is intended to preclude employers or insurers from recovering penalties as part of their subrogation recovery when such payments result from their own wrongdoing. Because the Mill Mutuals cites no legal authority for its interpretation of the interest exclusion in section 176.061, subd. 6, we decline to overrule the trial court's literal interpretation of the plain language of the statute.

## DECISION

The trial court's judgment is affirmed.

Affirmed.

There shall be no reimbursement or credit to the employer or to the special compensation fund for interest or penalties.

Minn.Stat. § 176.061, subd. 6.