ROBERT BATTERTON, Plaintiff-Appellee, *v.* CLIFFORD THURMAN, Defendant-Appellant.

Third District    No. 81-455

Opinion filed April 20, 1982.—Rehearing denied May 20, 1982.

David F. Buysse and John E. Cassidy, Jr., both of Cassidy, Cassidy, Mueller & Price, of Peoria, for appellant.

Ronald Weber, of Froehling, Taylor & Weber, of Canton, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff, Robert Batterton, brought suit against defendant, Clifford Thurman, for assault and battery. The two-count complaint sought compensatory and punitive damages. After a three-day trial, a Fulton County jury returned a verdict for plaintiff. Compensatory ($13,000) and exemplary ($33,000) damages were awarded. Defendant's motion for a remittitur was granted, decreasing the punitive damage award to $10,000. Plaintiff appeals the allowance of a remittitur (Ill. Rev. Stat. 1979, ch. 110A, par. 366(b)(2)(ii)). Defendant appeals from the general judgment entered on the verdict and the denial of his motion for a new trial.

On February 6, 1978, Mr. Thurman struck plaintiff in the face with his fist. Mr. Batterton's jaw broke in two places. The genesis of the striking was a verbal dispute over the death of several hogs owned by Mr. Thurman. Plaintiff resided in a farm dwelling which he rented from defendant. On that farm, Mr. Thurman kept hogs. According to defendant, plaintiff's dog killed the hogs. Plaintiff, on the other hand, said the hogs were killed by coyotes frequenting the area.

Trial testimony reflects that the parties had opposite views as to what transpired on the day plaintiff was injured. Both agreed they conversed

outside the Batterton dwelling. Batterton showed Mr. Thurman a letter wherein Thurman's insurer wrote Mr. Batterton it would not pay for the loss of the hogs. Plaintiff reiterated his dog did not kill the hogs. Then, either Thurman began pummelling plaintiff, or, according to Mr. Thurman's self-defense theory, Mr. Batterton began pushing him and slugged him in the neck. After that defendant had no recollection of what happened, until, as he testified:

> "* * * I found myself just standing there. I looked down and there Bob laid. * * * I was—there I was, and I said, 'Christ, what have I done now?' I thought I'd killed him. He wasn't breathin'. His eyes was [sic] closed—completely out * * *."

Eventually, Mr. Batterton came to. Surgery, required to repair the fractures, was partially successful. Plaintiff, a heavy equipment operator at a coal mine, lost 400-500 work hours. His hourly wage was about $10. At the time of trial he still experienced bouts of dizziness, headaches and a popping sound in his ears. Medical bills approximated $3,000.

Because of the incident, Mr. Thurman was charged with the criminal offense of battery. Following a period of court supervision, an order of expungement was entered which impounded that court record. Judge Bath, who presided at those proceedings, was allowed to testify in the case at bar over defendant's objection.

This appeal has seven issues: (1) Were admissions of defendant from his expunged criminal case properly admitted? (2) Was refusal to allow defendant's character witness testimony proper? (3) Did prejudicial closing argument by prosecutor occur? (4) Was a special interrogatory properly given? (5) Was a certain jury instruction on punitive damages properly given? (6) Were the verdict forms prejudicial? and, (7) Was the trial court correct in ordering a remittitur?

On the second day of the civil trial, plaintiff filed a motion to open up the expunged criminal case file charging Mr. Thurman with battery. Judge Bath presided at those proceedings. The motion was allowed. Judge Bath then testified in the civil trial from the criminal file's docket sheet and read those facts to which Mr. Thurman had stipulated. In that criminal cause Mr. Thurman did not plead guilty but admitted striking the plaintiff, or those facts necessary to sustain a criminal battery charge. Judge Bath could not personally recall the case, Mr. Thurman, or the matters the cause entailed.

On appeal, defendant urges allowing such testimony was error since the trial judge had no jurisdiction to remove the criminal case file for plaintiff's benefit without notice to defendant. He also maintains such hearsay testimony was inadmissible since nonprobative and unduly prejudicial. We disagree.

■■ The trial judge was not overruling the expungement order. The latter

merely deleted the defendant's arrest record and other identifying materials from police records. That order is still valid and binding. Plaintiff's motion did not seek identification information but only those facts which defendant admitted pertaining to the criminal battery charge. Judge Bath did not read from such arrest records but only from the court's own docket sheet as well as the charging instrument and defendant's response thereto. Although defendant now claims surprise because of plaintiff's motion, this contention is belied by his failure to indicate unpreparedness to the trial judge either orally or by moving for a continuance.

Defendant's contention that such testimony was prejudicial and without probative value is unpersuasive. The ramifications of an order of supervision may be different than a criminal conviction or plea of guilty. (*Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 57-61.) We perceive no error in the manner in which Judge Bath's testimony was introduced. The scope of such testimony was limited to prior admissions of fact. In order for Mr. Thurman to be eligible for supervision he had to stipulate to the facts underlying the criminal battery charge or plead guilty to the offense (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(c)). He chose the former. In so doing he made a binding admission to the fact he struck plaintiff and injured him. In other words, he indicated his acts amounted to battery in order to obtain favorable terms as to punishment. (*People v. Bodine* (1981), 97 Ill. App. 3d 42, 45.) Such an admission is recognized by the majority of jurisdictions as being admissible in a subsequent civil trial. (Annot., 90 A.L.R.3d 1173, 1177 (1979).) We think such a rule of evidence manifests logic and common sense. Thus, we adopt it.

During trial Mr. Thurman sought to introduce character evidence, through the testimony of Richard Hopkins, that defendant was genial and law-abiding. Plaintiff's objection was sustained. Defendant contends that such ruling was erroneous.

■■ In essence, Mr. Hopkins' testimony was presumably elicited for the purpose of showing that Mr. Thurman acted in conformity with his general character for peacefulness, the resulting inference being that on February 6, 1978, defendant conducted himself peacefully, thereby circumstantially rebutting plaintiff's claim he was the aggressor. Such use of character evidence is proper. The ruling which sustained the objection was erroneous. In a case where the proofs amount to a criminal act involving intent, the party charged may introduce evidence of good character to overcome such proofs. (*People ex rel. Collins v. Matt* (1922), 224 Ill. App. 210.) However, defendant failed to make an offer of proof concerning the content of Mr. Hopkins' testimony. Hence, the error was not properly preserved and is now deemed waived.

■■ During closing argument plaintiff's attorney reminded the jury Mr.

Thurman did not plead self-defense to the criminal charges which arose out of the altercation. Defendant's objection was sustained. A curative instruction was not requested by defense counsel. Mr. Thurman says the prejudicial aspects of this statement mandate a new trial.

We might agree with defendant if the remark had been reiterated after objection. But it was not. The remark was made once. The trial judge quickly sustained an objection to it. A limiting instruction was not requested. This one comment was not reversible error.

At the jury instructions conference, one of defendant's attorneys requested the following special interrogatory be given the jury:

"Do you find that the injury suffered by plaintiff was the proximate result of an intentional act by defendant?

Yes _____

No _____."

Plaintiff's attorney as well as defendant's other counsel objected. The trial court gave the interrogatory and the jury answered it affirmatively. Defendant contends this was error since plaintiff's complaint did not allege the commission of the intentional tort of battery, and either response by the jury to the interrogatory would not control the general verdict. In a word, since the interrogatory did not relate to those facts necessary to sustain the pleaded causes of action it should not have been given.

■■■ The giving of a special interrogatory is proper if it pertains to the ultimate facts differentiating the respective liabilities of the parties, and if the jury's response thereto would be inconsistent with the general verdict on the issues of the case. (*Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 349-350.) The giving of the interrogatory was error since the finding of an intentional act is not inconsistent with negligent or wilful or wanton conduct. The error, however, was harmless. We fail to see any detriment accruing to defendant because the interrogatory was given. Indeed, it was defendant's counsel who offered it.

■■ Plaintiff's instruction No. 26 requested punitive damages if defendant was found guilty of wilful and wanton conduct. Defendant argues this admonition was improper since the trial produced no evidence of defendant's financial worth.

The parties theorize at length whether proof of financial worth must be in evidence before an award of exemplary damages can be returned. Although the position in Illinois is not well defined (compare *Mullin v. Spangenberg* (1884), 112 Ill. 140, with Annot., 9 A.L.R.3d 692, 697 (1966) (Illinois cases)), such is not the point. The record in this case forms the basis for decision. Trial testimony indicated that as of February 6, 1978, Mr. Thurman farmed three different properties as a tenant. He owned a 70-cow dairy operation and was fattening 90-100 of his own hogs.

Although such evidence is by no means conclusive as to defendant's financial status, neither does it leave the jury to guesswork in fixing an award. He had substantial assets. Plaintiff's instruction, the standard IPI version, was correctly given.

■■ Defendant's final contention is that the verdict forms submitted to the jury were prejudicial. The itemized form indicated:

> "We, the Jury find for the plaintiff and against the defendant. We assess the damages in the sum of $_____ itemized as follows:
> (a)  Economic loss                          $_____
> (b)  Non-economic loss                  _____
> (c)  Exemplary damages                _____."

By statute (Ill. Rev. Stat. 1979, ch. 110, par. 65.1) defendant claims such forms were unduly prejudicial for two reasons. They did not include the term, "if any." And, the statute mandates that only damages pertaining to economic or noneconomic loss be itemized.

The statute in question (Ill. Rev. Stat. 1979, ch. 110, par. 65.1) says:

> "Itemized verdicts. In every case where damages for injury to the person are assessed by the jury the verdict shall be so itemized so as to reflect the monetary distribution among economic loss and non-economic loss, if any."

The purpose of the statute is to provide the parties more information concerning the makeup of the jury's award. Although we recognize the statute does not include the term "exemplary damages," including such an item in a verdict form was not improper. The jury was informed of those circumstances where they could return an exemplary award. The hypotheses under which exemplary damages might be awarded was clearly set out in plaintiff's pleadings and instruction No. 26. The latter was given without objection and clearly stated the law. The instruction neither invited nor told the jury to return an exemplary award. They could have left the item blank. The itemization of the verdict form concerning exemplary damages furthers the purpose of the statute by providing the parties with more information concerning the content of the verdict. Also, the omission of the term "if any," although perhaps an oversight, is not statutorily required. *Doering v. Janssen* (1979), 76 Ill. App. 3d 62, 67.

The trial judge granted a remittitur of $33,000 to $10,000 concerning the jury's award of exemplary damages. The trial judge noted the jury's verdict "shocked the conscience of the court." Plaintiff says this was error. We agree.

■■■ Generally, a jury verdict should not be disturbed unless it is the product of passion or prejudice. (*Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 453.) Each verdict must be assessed based on the distinct facts presented in the cause. A trial judge does not have the power to speculatively and gratuitously negate a jury's verdict. In this cause, the

record supports the verdict both as to actual and punitive damages. The trial judge offered neither his reasons nor his conclusions as to why the jury erred in computing the punitive award. The amount of the award apparently seemed excessive to the trial judge. But he cannot overturn such an award merely because he, for subjective and unknown reasons, would have computed damages differently. A basis in fact, evidenced by the record, must exist showing the award was erroneous or was the result of prejudice or passion before it can be reduced. The trial judge indicated no such facts, and we see none. Thus, the trial judge was in error in granting a remittitur.

For the reasons stated we affirm the general verdicts of the jury. The remittitur awarded to defendant is reversed and judgment entered pursuant thereto is hereby vacated. The original jury award as to punitive damages is hereby reinstated and judgment is ordered entered thereon.

Affirmed in part. Reversed in part. Judgment of trial court vacated. Judgment ordered entered in favor of plaintiff on jury's verdict.

ALLOY and STOUDER, JJ., concur.