AMSTAR CORPORATION *et al.*, Plaintiffs-Appellees, v. AURORA FAST FREIGHT *et al.*, Defendants-Appellants.

Third District   No. 3—85—0089

Opinion filed March 17, 1986.

Walter M. Ketchum, Ltd., and Patrick S. Moore, Ltd., both of Chicago, for appellants.

Robert R. Gorbold, of Thomas, Wallace, Feehan, Baron & Kaplan, Ltd., of Joliet, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

A semitrailer truck owned by Amstar Corporation and driven by Herman Janzen was involved in a collision with a semitrailer truck owned by Aurora Fast Freight and driven by Harold Kerley. Amstar and Janzen brought suit against Aurora and Kerley seeking to recover for property damage (Amstar) and personal injuries (Janzen) arising from the collision. Aurora and Kerley counterclaimed, seeking similar recoveries. A Will County jury, applying the rules applicable to comparative negligence, found Amstar and Janzen to be 20% at fault and Aurora and Kerley to be 80% at fault. Aurora and Ker-

ley brought the instant appeal seeking our review of the judgment entered on the jury's verdict by the circuit court of Will County.

The collision which gave rise to the various claims just described occurred on April 20, 1981, at approximately 10:40 p.m. The location of the collision was the northbound lanes of Interstate 55 at the intersection with U.S. Route 66. Interstate 55 is a four-lane divided highway, and at the intersection in question the interstate bridges U.S. 66 with access available through entrance and exit ramps. Approaching the bridge in the northbound lanes, the interstate curves to the right and proceeds slightly uphill. Traveling from the bridge in the same lanes, the highway curves to the left and goes downhill.

On the night of the collision, Kerley, driving the Aurora semi, had stopped at the top of the hill on the shoulder of Interstate 55 which parallels the northbound lanes. After about five minutes, he re-entered the roadway traveling north, curving to the left and going downhill. Janzen, driving the Amstar semi, approached the hill also traveling north, and after noticing the Kerley/Aurora semi in the roadway ahead, was unable to stop.

The plaintiffs contend that the Aurora/Kerley semi re-entered the roadway just over the crest of the hill proceeding at less than a safe speed and without flashing warning lights. The defendants contend that the Amstar/Jenzen semi was proceeding above the maximum speed allowed and was unable to stop for a vehicle proceeding lawfully in its path. The jury apparently found some truth in both theories of the case, because, as stated at the outset, it found both the plaintiffs and the defendants at fault, at least in part. The defendants assert on appeal that error occurred in the circuit court both in the admission of evidence and in the instruction of the jury— error which may have led the jury to a misapportionment of fault.

■■■ During the course of the defendant's case, they attempted to introduce into evidence a videotape which had been taken of the scene of the occurrence. The videotape, taken from a moving car, was objected to by the plaintiffs. The circuit court sustained the objection, and the jury was not permitted to see the evidence. We agree with the defendants, who state the general proposition that motion pictures and videotapes, like still photographs, where material and relevant, are admissible into evidence. (*Eizerman v. Behn* (1956), 9 Ill. App. 2d 263, 132 N.E.2d 788.) However, where a photograph might confuse or mislead the jury it may be inadmissible. (*People v. Rolon* (1979), 71 Ill. App. 3d 746, 390 N.E.2d 107.) Where the photograph offers a different vantage point from that of a witness whose testimony is sought to be impeached by the photograph,

the trial court has discretion to exclude the photograph as an exhibit. (*People v. Rolon* (1979), 71 Ill. App. 3d 746, 390 N.E.2d 107.) In the instant case, the difference in vantage point from the videotape camera aimed through an automobile windshield and the plaintiff Janzen looking through a semitractor's windshield several feet higher would be significant, and potentially misleading. What Janzen was able to see, when he was able to see it, and how long he had to react were crucial evidentiary issues before the jury. The lower vantage point of the automobile windshield would, under these circumstances, be sufficiently dissimilar to the view from the semitractor's windshield to explain the exercise of the circuit court's discretion in excluding the videotape. We believe, therefore, that the court's discretion was not abused.

■■ The defendants objected to five jury instructions offered by the plaintiffs and given by the circuit court. Among the instructions which they believe were erroneously given to the jury was plaintiffs' No. 23. That instruction was based on Illinois Pattern Jury Instruction (IPI) Civil, No. 60.01 (2d ed. 1971), which provides that the violation of a statutory prohibition may be evidence of negligence. In this case, the instruction incorporated section 11—1303(1)(j) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—1303(1)(j)), which prohibits stopping, standing or parking a vehicle on any controlled-access highway. The defendants assert that the giving of this instruction was improper in that there was no evidence that Kerley parked the Aurora vehicle on a controlled-access highway. Rather, they assert, he parked on the shoulder of the highway. We find no authority which has previously addressed the question of whether a controlled-access highway, as defined, includes or excludes the shoulder. However, the term highway is defined (Ill. Rev. Stat. 1983, ch. 95½, par. 1—126), and, in contrast to the term roadway (Ill. Rev. Stat. 1983, ch. 95½, par. 1—179), a highway does include the shoulder or berm. With no contrary indication in the statute, we must assume that a controlled-access highway, by definition, includes the shoulder, and there is evidence that the defendants' semi was parked on the shoulder. We conclude that the instruction was properly given.

■■ In plaintiffs' No. 24, also objected to by the defendants, the jury was apprised of the traffic rule set forth in section 11—803 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—803). This was another IPI Civil 2d No. 60.01 instruction. Section 11—803 provides that:

"No person shall start a vehicle which is stopped, standing, or

parked unless and until such movement can be made with reasonable safety."

Again, the defendants contend that there is no evidence to support the giving of this instruction. We do not agree. According to Janzen's testimony, the defendant Kerley re-entered the Interstate 55 roadway just over the crest of an incline at a speed not exceeding 20 miles per hour. Other traffic on the roadway was traveling at much higher rates of speed. We believe the jury could correctly conclude, based on Janzen's testimony, that Kerley proceeded without regard to reasonable safety. The defendants' objection to No. 24 was correctly overruled. *Schlink v. Bass* (1972), 5 Ill. App. 3d 527, 283 N.E.2d 340.

■■ ■ Plaintiffs also tendered to the circuit court instruction No. 21, which, like the foregoing instructions, was an IPI Civil 2d No. 60.01, but this time with the language of section 11—711(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—711(a)) inserted. This section provides that:

"No person may drive a vehicle onto or from any controlled access highway except at entrances and exits established by public authority."

In the preceding analysis, we concluded that a highway includes the shoulder or berm. If the defendants' semi was already on the shoulder, it was already on the highway. Hence, it did not enter the highway as it left the shoulder. It simply traveled to another part of the highway. Since there is no evidence to support this instruction, we agree with defendants that it should have been refused at their request. However, not every error in giving instructions necessitates a new trial. A reviewing court will ordinarily not reverse a trial court for tendering faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant. (*Pendowski v. Patent Scaffolding Co.* (1980), 89 Ill. App. 3d 484, 411 N.E.2d 910.) The IPI instruction used in this instance does not equate a statutory violation with negligence. It is but one factor to consider in the jury's deliberation. Even if the statute prohibited entering the roadway from the shoulder, such an action would not have been a contributing cause of this collision without other concurrent acts of negligence. For this reason, we fail to see how the giving of this instruction resulted in prejudice to the defendants.

■■ In yet another instruction utilizing IPI Civil 2d No. 60.01, the plaintiffs sought to advise the jury of the traffic rules set forth in section 11—701(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—701(b)). That instruction requires vehicles moving

at less than normal speed to be driven as close as practicable to the right hand curb or edge of the roadway. The defendants assert that this instruction was improper inasmuch as all the evidence established the location of the Aurora semi driven by Kerley in the right-hand lane at the time of the collision. The statute, however, requires not only travel in the right-hand lane, but travel as close as practicable to the right hand curb or edge of the roadway. Since the jury could find, based on the evidence, that the statute was but partially complied with, the circuit court did not commit reversible error in charging the jury with the plaintiffs' No. 22.

■ Plaintiffs' instruction No. 15 was patterned after IPI Civil 2d No. 20.01, a charge to the jury that summarizes the issues which remain to be decided in the case. It enumerates allegations of negligence from the plaintiffs' complaint. The defendants posit that no evidence was presented to support those allegations. In the preceding discussion, we have concluded that there was sufficient evidence to warrant the giving of instructions on various alleged statutory violations, and it follows that those allegations were properly issues for the jury's deliberations. Instruction No. 15 was not in error.

■ The defendants also complain of error in the circuit court's refusal to give three instructions they tendered. The first, defendants' No. 9, is based on IPI Civil 2d No. 60.01 and makes reference to language in the United States Code which requires

"Every motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated."

While the giving of this tendered instruction would not have been error, the failure to give such an instruction—under these facts—is likewise not error. As is by now apparent, the jury was instructed on numerous, specific traffic rules which might have been violated at the time of the subject collision. In each case they were charged with determining whether the violation of a specific traffic rule, together with all other facts and circumstances, was sufficient to constitute negligence. In light of the numerous specific traffic rules which were before the jury, the failure to give defendants' No. 9, a general statement that the more specific rules must be obeyed, resulted in no prejudice.

■ Defendants' instruction No. 5 would have advised the jury that the speed limit on the interstate was 50 miles per hour. The trial judge took judicial notice that the posted speed limit on the interstate at the location in question was 55 miles per hour, not 50 miles per hour, and refused the instruction as tendered. Instructions

must accurately state the law. (87 Ill. 2d R. 239.) Where they do not, they are properly refused.

■■ The final instruction refused by the circuit court was defendants' No. 10. A non-IPI instruction, No. 10, would have informed the jury that the Federal code has the same force and effect as a State statute. Those portions of the Federal code which were presented to the jury were each presented in the context of IPI Civil 2d No. 60.01, as were those portions of the Illinois statutes with which the jury was charged. Since both were presented to the jury embedded in the same pattern instruction, there was no reason for the jury to conclude that the Federal and State requirements had anything but the same force and effect. Again, we find no error.

■■ The defendants' final allegation of error concerns the damages awarded by the jury to the plaintiff Janzen. It is contended that the award of $70,400, reduced by 20% to a net verdict of $56,320, is excessive. The severity and permanency of Janzen's injuries was disputed by the medical witnesses who testified. In their brief on appeal, the defendants assert that the "unbiased medical testimony *** minimized the injury" suffered by plaintiff Janzen. A far more disabling condition was diagnosed by the plaintiff's expert witness, a medical doctor, who is characterized as a "hired gun" in the same brief. Despite the fact that the defendants believe their evidence was more persuasive, the jury apparently found the contrary testimony more credible and convincing. There is no reason to set aside the jury's verdict under these circumstances.

For the reasons previously set forth, and in reliance on the authorities cited, we find no error in the judgment entered on the jury's verdict by the circuit court of Will County.

Affirmed.

STOUDER and WOMBACHER, JJ., concur.