MICHAEL MEISTER, Indiv. and as Adm'r of the Estate of Matthew Meister, Deceased, and as Next Friend of Michael R. Meister, Jr., *et al., et al.,* Plaintiffs-Appellants, v. DAVID O. HENSON *et al.,* Defendants-Appellees.

Third District No. 3—93—0248

Opinion filed December 9, 1993.

BRESLIN, J., specially concurring.

Moehle, Swearingen & Associates, Ltd., of Washington (Bradley W. Swearingen, of counsel), for appellants.

Scott R. Paulsen, of Quinn, Johnston, Henderson & Pretorius, of Peoria (W. Thomas Johnston, of counsel), for appellees.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiffs, Michael R. Meister, Dorothy J. Meister, and their minor children, Rebekah Meister, Sarah Meister, Michael R. Meister, Jr., and the estate of Matthew J. Meister (the Meisters), appeal from a judgment for the defendants, Ralph Andresen, and his employee, David O. Henson. This dispute arose from an automobile accident on December 15, 1982, on Interstate 74 (I-74) near Morton, Illinois. After a trial, the trial court entered judgment on a jury verdict in favor of the defendants. The Meisters appeal. We affirm.

At approximately 11 p.m. on December 15, 1982, Ralph Andresen received a call from a motorist whose car was stranded in the median of I-74 between the eastbound and westbound lanes, just west of the U.S. Route 150 (Rt. 150) overpass near Morton. At about 11:15 p.m., Andresen called the Illinois State Police to request assistance and traffic control and to inform the police of their presence at the scene. The State Police stated that a trooper would be dispatched to the scene.

Andresen then called his employee, David Henson, to assist the stranded motorists. Henson proceeded to a nearby truck stop to pick them up and drove them to the site of their disabled car. Henson drove the tow truck on I-74 westbound toward Peoria. Henson drove the truck below the posted speed limit because the Rt. 150

overpass was icy and slippery. As Henson approached the location of the disabled car, he drove from the right lane to the left lane and decelerated. He activated the tow truck's amber oscillating lights as he pulled the truck onto the left shoulder or the median of westbound I-74. No police had yet arrived on the scene to provide the requested traffic control, so Henson took no action to extricate the car except activating the truck's winch and rear work lights.

Meanwhile, at about 11:50 p.m., Dorothy Meister was driving her car in the right lane of westbound I-74 towards Peoria. Her four minor children were with her in the car. The Meisters were returning to the area from Chicago and had experienced inclement weather that night. As she approached the crest of the bridge over Rt. 150 near Morton, she saw a set of two white lights that appeared to be in her lane. Before she had time to react, Dorothy then observed a second set of white lights above the first set. Believing the lights to be an oncoming vehicle in her lane, Dorothy began pumping the brakes. As Dorothy's car descended the overpass, her attempts to slow her vehicle caused it to begin sliding across the left westbound lane of I-74 and toward Henson's tow truck. The Meisters' station wagon collided with the truck near the median between the eastbound and westbound lanes of I-74. Dorothy, Rebekah, Michael Jr., and Sarah were injured. Matthew Meister died in the accident.

On December 14, 1984, the Meisters filed a complaint against the defendants. Their complaint alleged the defendants were negligent in causing Dorothy Meister to lose control of her vehicle and in violating sections 11—1303(a)(1)(j) and (a)(1)(k) of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1991, ch. 95½, pars. 11—1303 (a)(1)(j), (a)(1)(k) (now 625 ILCS 5/11—1303(a)(1)(j), (a)(1)(k) (West 1992))). These sections prohibit stopping or parking a vehicle on any controlled-access highway or in the area between roadways of a divided highway, except (1) when necessary to avoid conflict with other traffic, (2) when necessary to comply with law, or (3) at the direction of a police officer.

The record reveals sharply conflicting trial testimony regarding the exact location of the tow truck and which lights were on at the time of the collision. Henson testified he drove his truck completely off the paved portion of the westbound lanes of I-74 and into the grassy median between the eastbound and westbound lanes to await the assistance of the State trooper. Henson also stated that prior to the collision he had only activated his amber oscillating lights. However, Dorothy Meister testified that just before impact, the entire

area behind the truck was illuminated. Dorothy also claimed that the truck's right front wheel protruded across the white reflector line and onto the traveled portion of the left westbound lane just before the right side of her station wagon hit the right rear of the tow truck.

In addition, both Henson and Andresen testified they knew the Rt. 150 overpass tended to form ice and become slippery and hazardous in winter weather when other roads and portions of I-74 remained clear. They also testified that they never attempted to assist stranded vehicles near the overpass without police presence to control traffic and provide warning of a potential hazard. Henson testified he waited for the State Police to arrive before attempting to remove the disabled car on the night of the accident.

At the close of the evidence, the trial court directed a verdict on the count alleging that the defendants violated section 11–1303(a)(1)(k) of the Code. The court held that driving a tow truck onto a median was necessary under the circumstances of the case to render aid to the disabled car in the median.

The trial court also struck four of the Meisters' proposed issues instructions to the jury. The defendants had objected to the instructions as duplicitous, unsupported by the evidence, or impermissibly enlarging the scope of the defendants' legal duties.

Finally, on the defendants' motion, the court presented to the jury a special interrogatory, asking the jury to determine whether the tow truck was completely off the traveled portion of I-74 at the time of the accident. Over the Meisters' objection, the court submitted the interrogatory. The jury answered the special interrogatory in the affirmative and returned a verdict for the defendants on January 15, 1993. The Meisters filed a post-trial motion on February 16, 1993. The trial court denied the motion on March 2, 1993. The Meisters filed a timely notice of appeal on March 31, 1993.

On appeal, the Meisters first argue the jury's verdict was against the manifest weight of the evidence. Specifically, the Meisters claim the defendants' conduct in proceeding to the site of the stranded car was the proximate cause of the accident. In support of their position, the Meisters point out that the defendants knew of the hazardous condition of the Rt. 150 overpass. The defendants testified they never performed towing services in that vicinity without the assistance of the State Police. From these facts, the Meisters claim the defendants acted negligently in parking the tow truck on the shoulder or the median. They also argue the defend-

ants' negligence was the proximate cause of the collision. We do not agree with the Meisters' analysis.

To constitute proximate cause, an injury must be the natural and probable result of a negligent act and be reasonably foreseeable by the actor. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 79, 117 N.E.2d 74.) If a defendant's negligence only furnishes a condition making injury possible, that negligence is not the proximate cause of the injury. (*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 316-17, 45 N.E.2d 665, 673; *Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 383, 609 N.E.2d 290, 294.) In *Bogovich v. Nalco Chemical Co.* (1991), 213 Ill. App. 3d 439, 572 N.E.2d 1043, the plaintiff's decedent lost consciousness while driving and collided with the defendant's truck, which was illegally parked on a median strip separating opposing lanes of traffic. The truck was highly visible due to its illuminated warning lights. The court held the truck's location was not the proximate cause of the accident because it had its warning lights activated and was readily visible. *Bogovich*, 213 Ill. App. 3d at 442-43, 572 N.E.2d at 1045.

In *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 467 N.E.2d 1153, the defendant was involved in an accident and parked his car, with one wheel protruding slightly onto the traveled portion of the road, along the shoulder. A deputy sheriff had arrived on the scene, but had no time to place flares to warn oncoming vehicles. The road conditions were hazardous, as the bridge near the scene of the accident had formed ice. The plaintiff's car approached the bridge, lost control on the ice, and slid into the defendant's car. The court held the vehicles on and near the shoulder were not the proximate causes of the accident, regardless of their precise placement. The defendant's car had merely furnished a condition for injury, not causation. Finally, since the plaintiff had lost control of his vehicle, he could have done nothing to avoid the collision even had he known of the presence of the defendant's car. *Long*, 126 Ill. App. 3d at 1064, 467 N.E.2d at 1156-57.

The Meisters have cited *Smith v. Armor Plus Co.* (1993), 248 Ill. App. 3d 831, 617 N.E.2d 1346, as additional authority. We find this case is distinguishable. *Smith* also involved an accident between a truck on the shoulder of a divided roadway and an oncoming car. However, in *Smith*, the abandoned truck on the shoulder had no lights activated, nor were any warning devices placed behind the truck. The defendant provided no warning whatsoever of the truck's presence on the shoulder. The key distinction of the instant case from *Smith* is that here, Dorothy Meister herself testified that

she saw a set of white lights and began to brake. David Henson testified he activated his amber oscillating lights upon arriving at the scene of the disabled vehicle. Regardless of which party's testimony is more credible, neither party disputes that Henson's tow truck was illuminated in some fashion prior to the accident.

■■ Here, the Meisters presented evidence the defendants' truck may have protruded onto the traveled portion of I-74 in the path of oncoming traffic. There was also evidence the defendants knew the overpass was hazardous and knew of prior accidents. However, the facts here are very similar to those in *Bogovich* and *Long*. David Henson drove the tow truck, at Ralph Andresen's direction, to the scene of the stranded vehicle located in the median. As Dorothy Meister drove her car over the Rt. 150 overpass, she lost control of the car and began sliding to the left, eventually colliding with the tow truck. Evidence the defendants presented at trial indicated that Henson had activated the truck's amber oscillating lights. The presence of the defendants' truck provided only a condition making an injury possible. We find that *Bogovich* and *Long* control the result here. Therefore, based on the evidence, we conclude that the jury could have found the tow truck's presence in the median of I-74 was not the proximate cause of the collision.

A jury verdict is against the manifest weight of the evidence if the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence. (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13.) The record shows there was evidence the truck had its oscillating lights activated and was completely off the road and in the median. It is undisputed that the truck lights were highly visible. Based upon the evidence presented at trial, we cannot say the verdict was against the manifest weight of the evidence.

The Meisters next argue the trial court erred in dismissing the count in their complaint alleging a violation of section 11—1303(a)(1)(k) of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—1303(a)(1)(k) (now 625 ILCS 5/11—1303(a)(1)(k) (West 1992))). This section provides, in pertinent part:

"(a) Except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer \*\*\*, no person shall:

1. Stop, stand or park a vehicle:

* * *

> k. In the area between roadways of a divided highway, including crossovers."

Under the circumstances here, the trial court held the conduct of the defendants did not violate the statute. Therefore, the court directed a verdict for the defendants. In support of its decision, the court noted the necessity for a tow truck to enter a median to extricate a disabled vehicle from the median. We agree with the trial court's decision.

The trial court did not base its decision expressly on any particular exception found in section 11—1303(a). After examining the statute and the record, we find nothing to support a conclusion that Henson drove the tow truck into the median at the direction of a police officer. Rather, we base our agreement with the trial court's decision on the exception found in section 11—1303(a), allowing a vehicle's presence in the median to avoid conflict with other traffic. In support of our holding, we point out that a court of review may sustain a trial court's judgment on any grounds supported by the record, regardless of whether the trial court's reasoning was correct. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502, 520 N.E.2d 37, 39.

We note the absence of any case law giving construction to the exceptions set forth in section 11—1303(a). Additionally, we note that tow trucks are not "authorized emergency vehicles" under section 1—105 of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 1—105 (now 625 ILCS 5/1—105 (West 1992))). Section 11—205(c)(1) of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—205(c)(1) (now 625 ILCS 5/11—205(c)(1) (West 1992))) only exempts authorized emergency vehicles from section 11—1303 of the Code. Consequently, the Meisters' assertion that tow trucks are subject to the requirements of section 11—1303(a) is correct.

We find no evidence indicating that Henson drove his truck in the area between the opposing roadways at the direction of a police officer. Ralph Andresen testified he received a call from the stranded motorist requesting towing services. He called the Illinois State Police to request police presence at the scene. Andresen was told a police car would meet the tow truck at the scene. He testified he called Henson and instructed him to (1) proceed to the disabled car's location, and (2) wait for the State Police to render assistance. When Henson arrived on the scene, no police had yet arrived. The record is barren of any indication that the State Police directed Andresen or Henson to place the tow truck in the median

or on the left shoulder of I-74. Therefore, we find the "directions of a police officer" exception to section 11—1303(a) is not satisfied.

However, we conclude Henson drove the tow truck into the area dividing the opposing roadways "to avoid conflict with other traffic." To remove the stranded car from the median, Henson had to park his tow truck on the shoulder or the median, away from cars and other vehicles traveling in the lanes of traffic. Had the tow truck been substantially obstructing a lane of traffic while awaiting the arrival of the police or while actually extricating the disabled car, the truck would have been in direct conflict with oncoming traffic. Based on these circumstances, we agree with the trial court's finding that the defendants did not violate section 11—1303(a)(1)(k) of the Code. We hold that when a tow truck or other vehicle designed to render aid to stranded or disabled vehicles stops or parks temporarily in the area between the roadways of a divided highway for the purpose of rendering assistance to the disabled vehicle located there, no violation of section 11—1303(a)(1)(k) of the Code occurs.

The Meisters next assign error to the trial court's refusal to submit four of their proposed issues instructions to the jury. The proposed instructions were as follows:

"[The defendants' conduct]

\* \* \*

(B) Caused confusion to traffic approaching from the East in the [westbound] lanes of I-74 by turning on white working lights;

(C) Stopped their vehicle suddenly and without prior warning in an area in which stopping, standing or parking is prohibited by Statute;

\* \* \*

(I) Created a hazardous condition for westbound traffic at the location of the Route 150 overpass by stopping said tow truck immediately in the path of vehicles skidding or sliding on said overpass when [the defendants] knew or, in the exercise of reasonable care, should have known that westbound traffic would have difficulty crossing said overpass and thus said tow truck posed a danger to any such vehicles;

(J) That the Defendant, RALPH ANDRESEN, failed to instruct his employee, DAVID O. HENSON, to await the assistance of the Illinois State Police before proceeding across the Route 150 overpass."

The trial court consolidated the charges in (B) into another instruction; struck (C) as duplicitous and because it charged conduct not alleged in the complaint; struck (I) as duplicitous; and struck (J) due to a lack of evidence supporting the charge and because it overstated the defendants' duty of care. The Meisters argue the trial court's refusal to give the jury instructions listed above deprived them of the opportunity to present their theories of the case. We disagree.

The parties to a lawsuit are entitled to have the jury instructed on their respective theories of the case, provided there is some evidence to support each theory. (*Lundquist v. Nickels* (1992), 238 Ill. App. 3d 410, 431, 605 N.E.2d 1373, 1388.) The trial court has discretion in determining which issues have been raised by the evidence and which instructions will be read to the jury. (*Gaines v. Townsend* (1993), 244 Ill. App. 3d 569, 576, 613 N.E.2d 796, 801-02.) An issues instruction is proper as long as it is succinctly stated without undue repetition. (*Jeffers v. Weinger* (1985), 132 Ill. App. 3d 877, 885, 477 N.E.2d 1270, 1276.) A new trial will be granted for the trial court's refusal to give a tendered jury instruction *only* where serious prejudice to a party's right to a fair trial has been shown. *Gaines*, 244 Ill. App. 3d at 576, 613 N.E.2d at 802.

Here, a review of the Meisters' issues instructions which were given to the jury demonstrates that the jury was adequately instructed on the theories of the case. In addition, we find no reversible error occurred. Instruction (B) was substantially included in instruction (A). Instruction (C) was restated as "Parked said wrecker so that the right front wheel protruded into the left hand west bound lane of I-74," which was the import of the proposed instruction (C). Instruction (E), which was given to the jury, incorporated the Meisters' proposed instruction (I). Instruction (J) was not given to the jury. However, we find that the trial court did not err in refusing to give this instruction. No evidence in the record supported the inference of the duty charged in instruction (J). In sum, we conclude the jury was adequately instructed on the Meisters' theories and instruction (J) was properly refused. Therefore, we cannot say the trial judge abused his discretion in refusing to give the instructions proposed by the Meisters.

Finally, the Meisters argue that the defendants' special interrogatory was improperly given. This interrogatory inquired as follows:

"Do you find the tow truck being operated by David O. Henson was completely off of the traveled portion of west-

bound lanes for Interstate 74 in a stopped position at the time of the [collision] in question?"

The jury answered the interrogatory in the affirmative. The Meisters now argue that the special interrogatory unduly emphasized the exact location of the tow truck and diverted the jury's attention from determining the issue of the defendants' negligence based on their overall conduct. We agree with the Meisters' claim that the interrogatory elicits a response to an evidentiary issue and not a material issue.

Moreover, we disagree with the defendants' argument that the interrogatory addresses a material issue relating to the alleged violation of section 11—1303(a)(1)(j) of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—1303(a)(1)(j) (now 625 ILCS 5/ 11—1303(a)(1)(j) (West 1992))). Section 11—1303(a)(1)(j) prohibits stopping, standing or parking a vehicle "on any controlled-access highway." The defendants contend the truck's right front wheel must have been on the traveled portion of the road to have violated the statute. They argue the interrogatory addresses this particular part of the case and elicits a direct answer to this issue. We find the defendants' argument is misplaced.

In *Amstar Corp. v. Aurora Fast Freight* (1986), 141 Ill. App. 3d 705, 490 N.E.2d 1067, we held that a road's shoulder is part of a "controlled-access highway" for the purposes of section 11— 1303(a)(1)(j). (*Amstar*, 141 Ill. App. 3d at 709, 490 N.E.2d at 1070.) Under *Amstar*, whether the truck was located on the shoulder or in a traveled lane is immaterial. For the statute's purposes, the tow truck would still have been located on the controlled-access highway. We further note the interrogatory did not ask the jury to determine the precise location of the tow truck. It only requested the jury to find whether the truck was situated on any part of the traveled portion of I-74. As indicated above, the interrogatory presented no material issue.

Rather, the interrogatory called for determination of an evidentiary issue. An interrogatory which asks for a finding as to a mere evidentiary fact is always improper. (*Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 38, 406 N.E.2d 544, 550.) A special interrogatory must address a material question of fact. (735 ILCS 5/2—1108 (West 1992).) A material question of fact is an ultimate fact upon which the rights of the parties depend. *Vulcan Materials Co. v. Holzhauer* (1992), 234 Ill. App. 3d 444, 452, 599 N.E.2d 449, 455.

In *Nelson v. Fehd* (1903), 203 Ill. 120, 67 N.E. 828, the carriage in which the plaintiff rode turned to avoid an approaching vehicle. The plaintiff's carriage slipped on the icy street into a ditch the defendant had excavated, injuring the plaintiff. At trial, the court refused to submit the defendant's interrogatory asking the jury to determine whether the right-hand wheel of the plaintiff's carriage entered the ditch. Our supreme court affirmed the trial court's refusal, stating that the interrogatory asked the jury to find an evidentiary fact. *Nelson*, 203 Ill. at 124.

■ Based on the cases cited above, we conclude the trial court erred in submitting the interrogatory to the jury. Here, the special interrogatory addressed the location of the truck in relation to the traveled lanes of I-74. The rights of the parties did not depend on the precise location of the tow truck. Based on the evidence presented, the jury could have found the defendants were negligent without determining the truck's exact position at the time of the collision. Therefore, the special interrogatory addressed an evidentiary issue and not a material issue.

However, we find no reversible error resulting from the improper interrogatory. Special interrogatories are ruled upon and submitted to the jury in the same manner as are instructions. (735 ILCS 5/2—1108 (West 1992); *Gasbarra*, 85 Ill. App. 3d at 37, 406 N.E.2d at 549.) A reviewing court will not find reversible error in the submission of a defective special interrogatory absent proof of prejudice to the complaining party or jury confusion. *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 136-37, 254 N.E.2d 453; *Eaves v. Hyster Co.* (1993), 244 Ill. App. 3d 260, 266, 614 N.E.2d 214, 219.

The Meisters' reliance on *Winn v. Inman* (1983), 119 Ill. App. 3d 836, 457 N.E.2d 141, is misplaced. In *Winn*, this court found reversible error in several jury instructions and a special interrogatory because the evidence concerning the issues addressed was substantially conflicting. However, both the instructions and the interrogatory misstated the applicable law. Here, the parties have not directed our attention to any erroneous statements of law in the instructions to the jury and we have found none. Moreover, we have found that the jury was properly instructed on the applicable law. In *Winn* the cumulative effect of the erroneous instructions and the special interrogatory was so great as to prejudice the plaintiffs. Here, the Meisters complain of only one erroneous interrogatory. As a result, we find *Winn* distinguishable. See *Winn*, 119 Ill. App. 3d at 840-41, 457 N.E.2d at 144-45.

We find the Meisters' argument that the jury's attention was improperly focused on the location of the tow truck to be purely speculative. Based upon our review of the record, we conclude the jury could easily have found the Meisters failed to carry their burden of proof. Additionally, we fail to see how the interrogatory caused prejudice to the Meisters. Therefore, the error in submitting the special interrogatory did not rise to the level of reversible error. See *Gasbarra*, 85 Ill. App. 3d at 39, 406 N.E.2d at 551; *Batterton v. Thurman* (1982), 105 Ill. App. 3d 798, 803, 434 N.E.2d 1174, 1177.

In sum, we hold (1) the jury's verdict was not against the manifest weight of the evidence because the tow truck was not the proximate cause of the collision; (2) a tow truck may park in the area between the roadways of a divided highway to render services to a disabled car located in a median to avoid conflict with other traffic under section 11—1303(a)(1)(k) of the Illinois Vehicle Code; (3) the proposed jury instructions were properly refused and the actual instructions adequately informed the jury of the Meisters' theories; and (4) the trial court erred in submitting the defendants' special interrogatory, but the error was harmless.

For the reasons indicated, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SLATER, J., concurs.

JUSTICE BRESLIN, specially concurring:
I agree that the defendants did not violate section 11—1303(a)(1)(k) of the Illinois Vehicle Code. (625 ILCS 5/11—1303(a)(1)(k) (West 1992).) However, I base my conclusion on trial testimony which established that the State Police directed the defendants to proceed to the scene of the accident, thus triggering the exception which allows stopping or parking between the roadways of a divided highway "at the direction of a police officer."

Section 11—1303(a) of the Illinois Vehicle Code prohibits stopping or parking on any controlled access highway "[e]xcept when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or other official traffic-control device." (625 ILCS 5/11—1303(a) (West 1992).) Here it was undisputed that the State Police had been notified of the car in the median and had arranged to meet the defendants at the scene. By

indicating that an officer would meet the defendants at the scene, the State Police implicitly directed the defendants to proceed there. Thus, the defendants' presence at the scene was "at the direction of a police officer."

By holding that a tow truck may stop or park in the area between roadways of a divided highway "when such stopping or parking is necessary to provide aid to a disabled vehicle," the majority effectively adds that phrase to the "except" clause of section 11—1303(a). Moreover, it provides an exemption for tow trucks, contrary to express language found elsewhere in the statute. See 625 ILCS 5/11—205(c) (West 1992) (authorized emergency vehicles may park or stand irrespective of other provisions), 625 ILCS 5/1—105 (West 1992) (definition of authorized emergency vehicle—tow trucks are not included).

It is not necessary to create new provisions in the law. We can decide the issue before us by applying the clear language of the statute to the facts at hand. Because the defendants were present at the scene of the accident at the direction of a police officer, their behavior came within the express exceptions found in section 11—1303(a) and the trial court correctly dismissed the plaintiffs' allegation to the contrary.